J. G. ADAMS v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

No. 1692. Decided June 12, 1907.

1.—Master and Servant—Negligence—Assumed Risk.

Plaintiff testified that, being employed to clean oil tank cars, he was injured by the giving way of a defective ladder on which he was descending into a tank for this purpose, it having been placed there and just before used by other employees engaged in repairing; that he had previously complained of the defects to the foreman, who had promised to repair; did not know that it was the one the other employees were using; could not see the defects on account of darkness in the tank; and was ignorant of a rule of the employer requiring employees to inspect all tools before using. Held that the evidence required a submission of the issue (1) as to the master's negligence (2) as

to defendant's contributory negligence (3) as to assumption of the risk by plaintiff; and would not justify a peremptory instruction for defendant. (Pp. 7–10.)

**2.—Same—Inspection—Rule of Employer.**

If it should be held that the master could, by mere notice or by contract, require servants to inspect all tools used by them, such rule, to be binding on the servant, should be brought to his knowledge. (P. 10.)

Question certified from the Court of Civil Appeals for the Fifth District, in an appeal from Johnson County.

*S. C. Padelford,* for appellant.—The plaintiff in this case having been employed by the defendant railway company in its switch yards and machine shops merely as a common laborer, whose duty it was to clean out tank cars and to do other manual labor, was not required to inspect the tools furnished him by the defendant, and the defendant could not shift the duty of inspection of the tools and appliances furnished to the plaintiff with which to perform his duty, by a rule or regulation placed on a little piece of paper and posted in places in the yard. Bookrum v. G. H. & S. A. Ry. Co., 57 S. W. Rep., 919; San Antonio & A. P. Ry. Co. v. Lindsey, 65 S. W. Rep., 668; Galveston, H. & S. A. Ry. Co. v. Butchek, 78 S. W. Rep., 740; Galveston, H. & S. A. Ry. Co. v. Butchek, 66 S. W. Rep., 335; Dupree v. Alexander, 68 S. W. Rep., 739; Peck v. Peck, 87 S. W. Rep., 248; San Antonio & A. P. Ry. Co. v. Bergsland, 34 S. W. Rep., 155; Drake v. San Antonio & A. P. Ry. Co., 89 S. W. Rep., 407.

Where the master manufactures a tool or implement for his servant and the same is made of defective material, the law is that the master is cognizant of such defect, and if the servant has no knowledge of the defect at the very time of the injury, the master is responsible for the damages resulting from such injuries caused by such defective implements. Duerst v. St. Louis Stamp Co., 63 S. W. Rep., 827; Goransson v. Ritter-Conley Mfg. Co., 85 S. W. Rep., 338.

The plaintiff, being a common laborer in the defendant's switch yards, was not required to inspect the tools and appliances given him, though instructions may have been given to the employes to do so, and the trial court erred in permitting the defendant to prove over plaintiff's objection that there were instructions given to the employes of the defendant in its yards in Cleburne requiring them to inspect the implements and tools, and which required the witness to inspect the ladder which was used, and which required the plaintiff to have taken said ladder out of the tank and inspected it. Bookrum v. Galveston, H. & S. A. Ry. Co., 57 S. W. Rep., 919; San Antonio & A. P. Ry. Co. v. Lindsey, 65 S. W. Rep., 668; Galveston, H. & S. A. Ry. Co. v. Butchek, 78 S. W. Rep., 740; Galveston, H. & S. A. Ry. Co. v. Butchek, 66 S. W. Rep., 335; Dupree v. Alexander, 68 S. W. Rep., 739; Peck v. Peck, 87 S. W. Rep., 248; San Antonio & A. P. Ry. Co. v. Bergsland, 34 S. W. Rep., 155; Drake v. R. R. Co., 89 S. W. Rep., 407.

*J. W. Terry, Brown, Bledsoe & Lomax* and *Chas. K. Lee,* for appellee.—Under the undisputed evidence in this case the court should,

as asked by the defendant, have directed the jury to find a verdict for the defendant, and under the law a judgment in favor of the defendant is the only judgment warranted by the evidence. O'Brien v. M. K. & T. Ry. Co., 82 S. W. Rep., 319; Gulf, C. & S. F. v. Larkin, 82 S. W. Rep., 1026; St. Louis, A. & T. Ry. Co. v. Kelton, 18 S. W. Rep., 933; Corcoran v. Milwaukee Gas Co., 81 Wis., 191; Cahill v. Hilton, 106 N. Y., 512; Meador v. Lake Shore & M. S. Ry. Co., 37 N. E. Rep., 721; Steinhauser v. Spraul, 27 L. R. A., 441; Jennie Electric Co. v. Murphy, 18 N. E. Rep., 30; Marsh v. Chickering, 101 N. Y., 396; Borden v. Daisy Roller Mill Co., 74 N. W. Rep., 91.

The duty and obligation of a master to inspect does not extend to simple ordinary appliances common in everyday life, for the reason that the obligation of the master to protect the servant does not extend to guarding him against dangers arising from the use of perfectly simple tools and contrivances as to which he is just as able to protect himself as the master is to protect him. O'Brien v. M. K. & T., 82 S. W. Rep., 319; 20 Am. & Eng. Enc. of Law, 89; Gulf, C. & S. F. Ry. Co. v. Larkin, 82 S. W. Rep., 1026; Wachsmuth v. Shaw Elec. Co., 76 N. W. Rep., 497; Jenney Elec. Light Co. v. Murphy, 18 N. E. Rep., 30; Corcoran v. Milwaukee Gas Light Co., 51 N. W. Rep., 328; Cahill v. Hilton, 106 N. Y., 514; Borden v. Daisy Roller Mill Co., 74 N. W. Rep., 91; Marsh v. Chickering, 101 N. Y., 399; Blundell v. Miller Elevator Mfg. Co., 88 S. W. Rep., 103; St. Louis, A. & T. Ry. v. Kelton, 18 S. W. Rep., 933; La Pierre v. Chicago & G. T. Ry., 58 N. W. Rep., 60; Meador v. Lake Shore & M. S. Ry., 37 N. E. Rep., 721.

Mr. Chief Justice Gaines delivered the opinion of the court.

A question in this case is certified to us by the Court of Civil Appeals for the Fifth Supreme Judicial District. The statement and questions are as follows:

"The appellant, J. G. Adams, instituted this suit in the District Court of Johnson County, against the Gulf, Colorado & Santa Fe Railway Company, appellee, to recover damages alleged to have been sustained by him while in its employ as a common laborer. He alleged that he was injured in going down a ladder into a tank car to clean the same; that when he placed his weight upon the ladder one of the sides broke and gave way and caused him to fall, whereby he was injured. It was alleged that the ladder had been placed in the car by the air men and when they were through they left it in the car for appellant's use and that he climbed upon the car and in attempting to descend into it the ladder broke causing him to fall. He alleged that the ladder had been manufactured by defendant and was furnished by it for its workmen to use. That the defect in the ladder was that one of the sides was made out of cross-grained material which rendered it liable to break and was the cause of its breaking. He claimed damages in the sum of $12,000. The petition is voluminous, but the above is the substance of the allegations.

"Defendant answered by a general denial, contributory negligence, assumed risk and that by the rules and custom of the company it was the duty of plaintiff to inspect and examine the tools used by him;

and if he failed to inspect, and it was in any way defective, then he was guilty of contributory negligence. A trial resulted in a verdict and judgment for defendant and plaintiff appealed.

"The plaintiff testified in substance that in August, 1904, he was employed by the defendant in its machine shops in the City of Cleburne as a common laborer to clean oil tank cars; that after oil tank cars had been repaired and prior to their being used again, it was the plaintiff's duty to go up on the tank cars and go down into them and clean them out; that these cars are very dark on the inside, being very large and made of metal and round and about eight feet or more in diameter, having only one hole or place of entrance, which is on the top in the center of the tank car, and being a hole 18 inches in diameter and just large enough to admit the body of a man, and the metal extends up above the hole and around it for about twelve or eighteen inches; that the defendant had furnished to plaintiff a ladder for the purpose of going down into said tank car; that this ladder was placed with its feet upon the bottom of the tank car, and the top on the tank car just below the hole or entrance; that a valve stem, which is round and about one inch in diameter, extends from the bottom of the tank car up to the side of this man-hole, and when a ladder is placed into the tank car this valve stem or pipe extends up by the ladder; that the air men, who also had to go down into these tank cars, also had a ladder, which was used for said purpose; that several days before the plaintiff's injuries he discovered that the side of the ladder which had been used by the tank cleaners had been broken on account of the grain running across said side piece and it had been repaired by having another piece nailed across said break; that plaintiff, seeing that this ladder was in this condition, showed the same to the foreman, Robertson, and told him to have the same repaired, and that his foreman told him that he would have it repaired and to use the air men's ladder until the cleaners' ladder was repaired; that the plaintiff did not see this ladder any more until after his injury; that on the day of and just prior to the injuries, plaintiff was ordered, and it was his duty, to go upon and down into a tank car, which was situated under a shed, and clean out the same; that these tank cars on the inside are very dark when under a shed, as was this one; that the plaintiff looked for the air men's ladder, but could not find it where they had been accustomed to keep the same, but he saw the air men coming out of the tank car and they told him that they would leave the ladder which they were using in there for his use; that after the air men had gotten out of the tank car he climbed up on it and placed his feet on the inside and got his candle, and just as he put his weight upon the ladder and started down, one side of the ladder broke and slid out, which caused him to fall down through the hole, and in order to prevent himself from being thrown with great force upon the bottom of the tank car, he caught hold of the valve stem or pipe, and his feet became entangled in the ladder and his whole weight was thrown upon his spinal cord and his back was wrenched and twisted and permanently injured; that plaintiff had never seen this ladder from the time he showed it to his foreman and the fore-

man promised to have it repaired until after he was injured, when he took it out of the tank car and saw it was the defective ladder, and that the side which had previously broken, had broken again, but above the former break; that the break was caused by reason of the defective side piece, the grain in the side piece being across instead of lengthwise, that is, the grain ran diagonally across one of the side pieces of the ladder, thus rendering it weak and liable to break; that the plaintiff after he had fallen into the tank car, placed said ladder in its broken condition against the pipe stem and near the air hole, and crawled out of the tank car and pulled the ladder out with him and placed it upon the ground near the tank car, and saw that it was the same defective ladder which the foreman had promised to have repaired, and that it broke on account of the defective material in one of the side pieces; that plaintiff did not know that this defective ladder was in the tank car, but supposed that the air men's ladder was in there, or that the defective ladder had been repaired and had been placed in there by the air men.

"Plaintiff's testimony showed that he sustained injury by the fall entitling him to have the issue submitted to the jury, if under all the evidence defendant was guilty of actionable negligence. The uncontroverted evidence showed that the company furnished ladders as they were needed by the employes; that the men were supposed to select their own ladders from the number so furnished and to inspect them themselves. That the ladder was a simple contrivance about eight feet long and ten or fourteen inches in width weighing about twenty-five or thirty pounds and could easily have been lifted out of the man-hole of the car and examined and the defect, if any, could have been seen. This particular ladder was selected by the air men and was used by them in going in and out of the car and they thought it was all right. The preponderance of evidence showed that there were a number of ladders on the work from which a selection could be made. The air men, Elmo and Edgar Armstrong, denied that they had a ladder of their own that they used separately and denied that they had a conversation with Adams as they were coming out of the tank car as testified to by him. The foreman, Robertson, denied that Adams notified him of a supposed defect in the ladder, and that he agreed to have it repaired. The railroad company by printed notices and by verbal instructions had expressly forbidden the men to use defective tools, but to inspect all tools before using. Adams denied that he had been so instructed or that he had read such notices. The notices were posted in prominent places in the yard.

"Question. Under the evidence, as above set, should the trial court have instructed a verdict for defendant as requested by it?"

The issues made by the pleading were: (1) Was the defendant company guilty of negligence in furnishing a defective ladder, (2) if so, was the plaintiff guilty of contributory negligence, and (3) did he assume the risk of the defect? In order to sustain the ruling of the trial court in instructing a verdict for the defendant, it must have appeared without conflict in the testimony, either that there was no evidence which authorized the jury to find negligence on part

of the defendant; or that the plaintiff was himself guilty of contributory negligence or that he assumed the risk.

We are of opinion that the testimony of the plaintiff, if believed by the jury would have authorized them to conclude, that the defendant was negligent in furnishing the defective ladder—especially in view of the fact testified to by him that he had called the attention of the defendant's foreman to the defect, and that he promised to have it repaired. It would seem that it was negligence to permit the ladder to go into use again until it had been made safe.

We also think that it was not shown by the undisputed evidence that plaintiff negligently contributed to the accident.

Does the testimony show without conflict that he assumed the risk? It is apparent that a fall in an oil tank caused by a defective ladder was not one of the ordinary risks of the plaintiff's employment. As a general rule the servant is not required to inspect the tools or other instrumentalities furnished him by his master for the performance of his duties. We think he does assume the risk of such defects as fall under his observation and of such patent defects as a man of ordinary capacity and prudence would necessarily observe in them in using them to do his work. Can the master by a mere notice or contract absolve himself from the primary duty of furnishing safe instrumentalities in the first instance? We doubt it. We think, however, that it is not unreasonable to require his servants to examine instrumentalities already in use in order to ascertain whether they are in good order. Hence we think a rule to require servants to inspect their tools, etc., ought to be construed as applying only to those already in use. But in any event in order to make a rule binding upon a servant it should be brought to his knowledge. The testimony that the defendant had instructed its servants verbally, and by posted notices not to use defective tools, but to inspect them before using them and the plaintiff's denial that he had been so instructed or that he had read such notices, as we think raised a question of fact which should have gone to the jury.

Since under our ruling the case should be remanded for a new trial, we deem it proper to refrain from a discussion of the evidence.