## FREEMAN v. STARR.

(Court of Civil Appeals of Texas. Galveston. May 6, 1911. Rehearing Denied June 15, 1911.)

1. MASTER AND SERVANT (§ 267*)—INJURIES TO SERVANT—DEFECTIVE TOOLS—EVIDENCE.

Where, in an action for injuries to a servant by the chipping of a hammer, the evidence was conflicting whether the hammer was made in defendant's shops, or was of the superior manufacture of a certain tool works, the court did not err in permitting evidence that hammers were made in defendant's shops by merely taking a piece of steel and shaping it up, planing and finishing it as a hammer, and tempering it, and that they were very inferior to hammers that had been forged and properly made.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 267.*]

2. MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—DEFECTIVE TOOLS—DUTY OF MASTER—INSPECTION.

Where a servant was injured by the chipping of a hammer furnished him, and there was evidence to raise the issue whether the hammer when furnished was of standard manufacture, or whether it was an inferior kind made by defendant in its shops, defendant was not only required to use ordinary care to furnish reasonably safe tools, but was also bound to use the same care in keeping them in a reasonably safe condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

3. TRIAL (§ 260*)—REQUESTED CHARGE—INSTRUCTIONS GIVEN.

Plaintiff was injured by a chip of steel flying from an alleged defective hammer while it was being used by a coemployé. The court in submitting the case based plaintiff's right to recover on a finding that defendant had failed to use the care that a person of ordinary prudence would have used under the same circumstances to have the hammer in a reasonably safe condition, and expressly charged that, unless the jury so found, they should find for defendant. *Held,* a sufficient submission of the issue of negligence arising from defendant's failure to inspect the hammer, and authorized the refusal of an instruction that if a person of ordinary prudence, in the exercise of ordinary care, would not, under the same circumstances, have inspected the hammer to discover its defective condition growing out of its use, to find for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where there was no evidence that the hammer from which a chip of steel which struck plaintiff was broken, had been struck a "careless, unfair, or glancing blow at the time," a request to charge that, if the piece of steel which injured plaintiff was caused to fly from the hammer, not by reason of its being chipped or slivered, but because of having been struck a careless, unfair, or glancing lick against some hard substance or tool, the jury should find for defendant was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

5. MASTER AND SERVANT (§ 295*)—INJURIES TO SERVANT—ASSUMED RISK.

In an action for injuries to a servant by a steel chip flying from an alleged defective hammer, instructions on the issue of assumed risk, when considered with the charge as a whole, *held* not erroneous or misleading as charging that an employé did not assume the risks ordinarily incident to his employment, if a person of ordinary care would have continued in the service with knowledge of the defects and dangers.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

Appeal from District Court, Anderson County; B. H. Gardner, Judge.

Action by A. N. Starr against Thomas J. Freeman, as receiver of the International & Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

John M. King, R. S. Shapard, N. B. Morris, and H. I. Myers, for appellant. A. G. Greenwood and Thos. B. Greenwood, for appellee.

McMEANS, J. A. N. Starr brought this suit against Thomas J. Freeman, as receiver of the International & Great Northern Railroad, to recover damages for an injury to appellee's left eye, received while in the employment of the receiver in the capacity of machinist, by being struck by a small particle of steel, alleged to have been broken off and cast from a hammer being used by one Coates, a coemployé.

Negligence was predicated upon the alleged failure of the receiver to use ordinary care to furnish said Coates such a hammer as could be used with reasonable safety to himself and the other employés in the shop where they were working, and by failure of the receiver to use ordinary care to keep said hammer in an ordinarily safe condition, and in failing to provide appellee with a reasonably safe place to work. Appellee alleged that the hammer was defective and dangerous, in that it had become chipped off, shivered, slivered, and cracked and was in condition to readily throw off particles with great force when struck against hard substances in the manner of its ordinary and intended use, and that such defects and the dangers therefrom were well known to appellant, or would have been known by the use of ordinary care, and that they were unknown to appellee, or that, if they were known to appellee, appellant was not relieved from liability, because a person of ordinary care would have continued in the service of appellant with such knowledge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Appellant answered by general demurrer and special exceptions, pleaded a general denial, and specially pleaded the defenses of assumed risk and contributory negligence, and also denied liability on the ground that appellee and Coates were fellow servants, and that, in the event they should be held not to be such, because of article 4560h of the Revised Civil Statutes of Texas of 1895, then that said article is void, because in contravention of the fourteenth amendment to the Constitution of the United States.

The case was tried before a jury and resulted in a verdict and judgment for appellee for $8,000, from which the receiver, after his motion for a new trial had been overruled, has appealed.

The evidence in the record justifies the conclusion, and in deference to the verdict of the jury we find, that appellee was injured in the manner and from the cause alleged in his petition; that appellant was negligent in failing to use ordinary care to see that the hammer was in a reasonably safe condition, and that such negligence was the proximate cause of appellee's injury; that appellee was not guilty of any negligence contributing to his injury, and that his injury did not result from a risk assumed by him, and that he suffered damages in the sum found in his favor by the verdict of the jury.

Appellant's fifteenth and sixteenth assignments of error, which complain of the refusal of the court to instruct a verdict in his favor, and the seventeenth, which complains that the court erred in not granting him a new trial, because the verdict and judgment are not supported by the evidence, and the eighteenth, which complains that the verdict and judgment are excessive, are necessarily disposed of by the foregoing findings adversely to appellant's contention.

[1] The court, over defendant's objection, permitted the witness J. D. Taylor to testify that, prior to April, 1908, defendant used homemade hammers in the shops; "that such hammers were made by just taking a piece of steel and shaping it up, planing and finishing it up as a hammer, and tempering the same; and that such hammers so made were very inferior to hammers that had been forged and properly made." The admission of this testimony is made the basis of appellant's first assignment of error, and to which assignment he subjoins the following proposition: "There was no evidence that the hammer used by Coates was a homemade hammer, but the uncontradicted proof having shown that the hammer used by plaintiff's coemploye, from which it was alleged a particle of steel was cast, striking plaintiff in the eye, was of a certain brand, of standard make and manufacture, it was highly prejudicial to defendant to admit evidence that defendant used homemade hammers in said shops, inferior to the hammer used by said Coates, said evidence being immaterial and irrelevant to any issue in the case, and the court erred in admitting same over defendant's objections."

We think the record does not bear out the contention that the uncontradicted evidence shows that the hammer in question "was of a certain brand, of standard make and manufacture." It is true that the witness Coates, who was using the hammer at the time appellee was hurt, testified positively that it was an "Evansville hammer," made by the Evansville Tool Works. He said: "The mark of this company was upon this hammer that I had at this time. I also had my initials cut in this hammer. I had them engraved there. * * * I know this was an Evansville hammer; you could see the impression of their brand upon this hammer. I could not be mistaken about this; I know that this was an Evansville hammer." There was testimony to the effect that the Evansville hammer was first class, and as good as any made. The testimony further showed that the hammers made in the shops were not as good as the Evansville hammer, because not as well tempered, and being more apt to break, chip, and sliver. On the other hand, although six witnesses examined the hammer used by Coates, none of them, save Coates, testified that it bore the stamp of the Evansville Tool Works. Appellee testified positively that there was no such brand on it that he could see. We think this testimony sufficient to raise the issue as to whether the hammer in question was of the superior manufacture of the Evansville Tool Works, or the inferior grade of hammer made in the shops, and that therefore there was no error in admitting the testimony complained of.

[2] The court in its general charge submitted to the jury the question of whether appellant had used ordinary care to see that the hammer used by Coates was in a reasonably safe condition, and instructed them that if appellant had used ordinary care in this regard to find for him. A special charge requested by appellant to the effect that the appellant did not owe to appellee the duty to inspect the hammer to discover whether it had become chipped or slivered was refused, and the action of the court in giving the charge complained of and in refusing to give the special charge is made the basis of appellant's second and third assignments of error. Under these assignments appellant, by his propositions, contends that the undisputed evidence having shown that the hammer used by plaintiff's coemploye was one of the simplest and most common of tools, and when furnished by defendant was of standard make and manufacture and in good condition, defendant owed no duty to plaintiff to inspect the same and ascertain its condition, and that defendant having pleaded, as a matter of defense, that he owed plaintiff no such duty, the court should not have given the charge complained

of, and erred in refusing to give the special charge requested.

We may say that the evidence was sufficient to raise the issue as to whether the hammer when furnished was of standard make and manufacture, or whether it was of the inferior kind made by appellant in his shops. The evidence justifies the conclusion that appellee was hurt by a fragment of steel being cast into his eye from the hammer then being used by a coemployé, and that the hammer at that time had become chipped and slivered. The testimony shows, practically without dispute, that some of the breaks in the hammer were old; that after a hammer has commenced to break and chip it is more likely to continue breaking and chipping than one that has not begun to break, and that when a hammer once commences to break and chip it will continue to do so, unless some work is done upon it; that the further breaking and chipping could be stopped by retempering and annealing; and that a hammer after it has once begun to break and chip is dangerous, and should either be retempered or thrown away.

The pleadings of plaintiff alleged that his injury was proximately caused by the negligence of defendant in failing to exercise ordinary care to furnish such a hammer as could be used with reasonable safety to appellee, because the same was defective and dangerous, in that it had become chipped off and slivered, and in such bad condition as to readily throw off particles with great force when struck against hard substances in its ordinary and intended use.

Conceding that the duty of ordinary care did not require of the master that regular and careful inspection of this simple tool which is essential to such care in relation to more complicated and dangerous appliances, it is still true that in furnishing a tool of any kind, and in keeping the same in a reasonably safe condition, the master is bound to use ordinary care for the safety of the servants. To limit the measure of care to an inspection would narrow the duty owing by the master to the servant to less than his full duty, if in fact the duty rested upon him, as we think it did in this case, not only to use ordinary care in furnishing, but in keeping in a reasonably safe condition, the tools and implements the servants were required to use in the discharge of their duties under their employment, and that this duty is nondelegable. Drake v. Railway, 99 Tex. 244, 89 S. W. 407; De La Vergne, etc., Co. v. Stahl, 24 Tex. Civ. App. 319, 60 S. W. 321; Buchanan & Gilder v. Blanchard, 127 S. W. 1154; Texas, etc., Ry. Co. v. Trijerina, 51 Tex. Civ. App. 100, 111 S. W. 239; Railway v. Schuler, 46 Tex. Civ. App. 356, 102 S. W. 783.

In Drake v. Railway, supra, the plaintiff was engaged in loading flat cars with steel rails, and was using a rail hook for this purpose. These hooks are simply tools with a crook at one end and a handle at the other and a stem about 20 inches long; the crooked end being inserted in the bolt holes in the rails. The hook being used by plaintiff, on account of it being worn and too small and not sufficiently curved, slipped from the hole in the rail as plaintiff was pulling upon it, whereby he was caused to lose his balance and fall and to receive the injuries of which he complained. On these facts our Supreme Court says: "The first question is whether or not the evidence raised an issue of fact for the jury as to the master's negligence, and in determining this the facts are to be considered in their combination, and an answer found to the inquiry whether or not they warrant a reasonable opinion that there was wanting on the master's part that ordinary care exacted by the law for the safety of his employé. This is not to be determined, in a case like this, by any hard and fast rules of law as to the duty of inspection, but by the judgment of rational minds upon the facts; and, if there be room for reasonable difference of opinion, the judgment of a jury must be taken. No solution of the question is reached by saying, as we said in the Larkin Case, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944, that the duty of ordinary care did not require of the master that regular and careful inspection of this simple tool which is essential to such care in relation to more complicated and dangerous machinery and appliances. With that much conceded, it is still true that, in furnishing a tool of any kind, the master is bound to use ordinary care for the safety of the servant who uses it. What shall be considered as constituting such care must be determined from the circumstances of each situation as it arises. * * *"

In reaching a conclusion as to whether the master in this case exercised that degree of care that the law exacted of him in furnishing tools and appliances to the servant for the performance of his work, we think, as said by the Supreme Court in the Drake Case, that the question of ordinary care is not to be determined by any hard and fast rules of law as to the duty of inspection, but upon the judgment of rational minds upon the facts; and if there be room for reasonable differences of opinion the judgment of the jury must be taken. The assignments are overruled.

[3] We think there is no merit in appellant's fourth assignment, which complains of the refusal of the court to give the eighth special charge requested by him, which, in effect, contained the instruction that if a person of ordinary prudence, in the exercise of ordinary care, would not, under the circumstances, have inspected the hammer to discover its condition growing out of its use by Coates, to find for defendant. The court in submitting to the jury the plaintiff's right to recover based said right upon a finding by the jury "that the defendant had failed to

use the care that a person of ordinary prudence would have used under the same circumstances to have said hammer in a reasonably safe condition," and expressly instructed the jury that, unless they so found, they should find for the defendant. This was a sufficient submission of the issue of negligence vel non arising from the defendant's failure to inspect the hammer, and the requested charge was therefore unnecessary and was properly refused.

[4] Appellant's fifth assignment complains of the refusal of the court to give its ninth special charge, wherein he sought to have the jury instructed that if they believed that the piece of steel which injured plaintiff was caused to fly from the hammer, not by reason of its being chipped or slivered, but because of having been struck a careless or an unfair or glancing lick against some hard substance or tool, to return a verdict for defendant. There was no evidence that the hammer had been struck a careless or an unfair or glancing blow, and the special charge was not called for by any of the facts proved, and the charge was therefore correctly refused. The assignment is overruled.

We have carefully examined all of appellant's assignments of error predicated upon the refusal of the court to give various other special charges requested by appellant, and are of the opinion that all such charges were correctly refused. The main charge, together with certain special charges given at appellant's request, sufficiently presented the law as applied to the facts of this case, and there was no need of elaboration. All of said assignments are overruled.

[5] Appellant's tenth, eleventh, and twelfth assignments complain of the charge of the court relating to the issue of assumed risk; the complaint being that the effect of the charge was to instruct the jury that an employé of the receiver would not assume the risks ordinarily incident to his employment, if a person of ordinary care would have continued in the service with knowledge of the defects and dangers. We think the charge is not susceptible to this criticism.

The court in paragraph 4 charged the jury as follows: "An employé of the receiver of a railroad company is held in law to assume such risks as are ordinarily incident to the service he is employed to perform, and such others as he knows of, or must necessarily have known of, in the ordinary discharge of the duties of his service; provided, however, that the risks arising from the negligence of the receiver are not assumed by an employé, unless he knows of them, or must necessarily have known of them in the ordinary discharge of the duties of his service, and until then he has a right to assume that risks arising from such negligence do not exist; and provided further, that, where a person of ordinary care would have continued in the service with knowledge of the defects

and dangers, then the employé is not held to have assumed the risks of such defects and dangers."

In paragraph 11 the jury was further charged: "If you believe from the evidence that plaintiff's injury, if any, was the result of a risk ordinarily incident to the service in which he was engaged, or that it resulted to him from a risk that was known to him, or must necessarily have been known to him, in the ordinary discharge of the duties of his service, and that a person of ordinary care would not have continued in the service with knowledge of the defect and danger, then you will find for the defendant, on the issue of assumed risk."

And in the twelfth paragraph the following charge was given: "In determining the issue of assumed risk, submitted to you in the next preceding paragraph, you are instructed that if plaintiff's injury, if any, was the result of the negligence (if any there was) of the defendant receiver, then, if plaintiff had no knowledge of the danger or risk arising to him therefrom until he was injured, and if he would not necessarily have known thereof in the ordinary discharge of the duties of his service, until injured, then the defense of assumed risk is not sustained. And if you find that a person of ordinary care would have continued in the service of the defendant receiver with such knowledge of the defect and danger, if any, as plaintiff possessed, if any, then the defendant would not be entitled to a verdict under the issue of assumed risk."

We think that under the charge as a whole the jury would have been compelled to find for appellant, if they found that appellee was injured from any ordinary risk incident to his employment. Under the charges quoted, appellant could not have been prejudiced relative to his defense of assumed risk for the following reasons: (1) Under the only paragraph of the charge which authorized a recovery for appellee, the jury were required to make an affirmative finding that appellant's negligence was the proximate cause of appellee's injury, and risks created by such negligence were not such as were ordinarily incident to appellee's employment; (2) the jury was expressly directed to find for appellant, if they did not affirmatively find that the negligence of appellant was the proximate cause of appellee's injury; (3) the jury was expressly told to find for appellant on the issue of assumed risk, if they believed from the evidence that appellee's injury "was the result of a risk ordinarily incident to the service in which he was engaged," the qualification relative to a person of ordinary care continuing in the service referring only to risks actually or constructively known to appellee; (4) after telling the jury to consider everything in the main charge and special charges together, and not in isolated sections, the court instructed the jury by special

charge No. 3, given at appellant's request, that it was incumbent upon appellee to establish by a preponderance of the evidence that he was injured by a piece flying from the hammer of Coates, and that the flying of the piece from the hammer was due to the negligence of appellant; (5) and then, after excluding by special charge No. 3 any right of appellee to recover for an injury caused from any fragment flying from Coates' hammer, unless the jury first found that its flying was due to appellant's negligence, the court by special charge No. 4, given at appellant's request, directed a verdict for appellant, if the jury found that appellee's injury was the result "of a sliver or piece chipped or chiseled from a piece of boiler steel, or by a particle thrown by the machine plaintiff was operating, or from any other machine in said machine shop, or from any other hammer, tool, or instrument in said machine shop."

The paragraphs of the court's charge, each considered by itself, might be susceptible to the construction placed upon them by appellant, but when the charge is considered as a whole, and in connection with the special charges given, it is clear that the court did not instruct the jury, and the jury did not understand, that appellee could recover if his injuries were due to risks ordinarily incident to the service, if a person of ordinary prudence, with knowledge of such risks, would have continued in the service. Railway v. Meehan, 129 S. W. 192; Railway v. Farmer, 102 Tex. 237, 115 S. W. 260. The assignments are overruled.

We are of the opinion that the record is free from reversible errors, and the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.