## MISSOURI, K. & T. RY. CO. OF TEXAS v. ODOM.

(Court of Civil Appeals of Texas. Dallas. Dec. 21, 1912. Rehearing Denied Jan. 11, 1913.)

1. MASTER AND SERVANT (§ 124*)—INJURY TO SERVANT — NEGLIGENCE — SIMPLE APPLIANCES.

A jack used to raise and lower cars consisted of a hollow frame into which a stem on one side of the surface of which were cut slits fitted. Into the front of the jack fitted a lever so that it might fit into the slits in the stem and elevate it and in turn elevate cars. A contrivance called a "dog" was set in front of the jack, which, by reason of a spring, stood pressed against the slits in the stem, and as the stem was raised by the lever the "dog," by force of the spring, pressed it against the slits and held the same in place. In the operation of the jack a rope was attached to the "dog" or spring. *Held*, that the appliance was not a simple or common tool, and the employer owed the duty of inspection and of furnishing a safe jack.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

2. MASTER AND SERVANT (§ 124*)—APPLIANCES—OBLIGATION OF MASTER.

An employer is under no duty to inspect during use common tools and appliances with which every one is conversant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

3. MASTER AND SERVANT (§ 124*)—INSPECTION—OBVIOUS DEFECTS.

A defect in a tool which develops while it is being used is not an obvious one.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

4. MASTER AND SERVANT (§ 286*)—INSPECTION OF APPLIANCES—QUESTION FOR JURY.

Where, in an action for injuries to an employé assisting in raising a railroad car with a jack, the employé had no opportunity to inspect the jack which, by reason of its construction, was not a simple tool, and jacks were scattered about the railroad yards, and it was the custom of employés to use any of them which did not have a bad order mark, and the evidence was conflicting on the question whether employés were required to inspect jacks before using them, and some witnesses testified that a defect in a jack was not discoverable except when in use, and others denied it, the question whether the railroad company was required to inspect the jack and liable for failing so to do was one of fact.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

5. MASTER AND SERVANT (§ 124*)—INSPECTION OF APPLIANCES—RULES OF EMPLOYMENT.

Ordinarily, the duty of inspection of appliances is on the employer, and, if he may shift the duty by rules, the employés must have knowledge of the rules requiring inspection by them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

6. MASTER AND SERVANT (§ 124*)—INSPECTION OF APPLIANCES—OBLIGATION OF EMPLOYÉS—RULES OF EMPLOYMENT.

Rev. Civ. St. 1911, arts. 6648–6651, invalidating any contract or rule the purpose of which shall be to enable a carrier to exempt itself from any liability to employés created, forbid a carrier from shifting to employés the duty of inspection of appliances furnished employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

7. MASTER AND SERVANT (§ 264*)—INJURY TO SERVANT—STATUTORY LIABILITY—ISSUES.

Where neither the pleadings nor the evidence in an action for injuries to a railroad employé disclosed that the railroad company was engaged in interstate commerce, the Federal Employer's Liability Act (Act June 11, 1906, c. 307, 34 Stat. 232 [U. S. Comp. St. Supp. 1911, p. 1316]) had no application in fixing the liability of the company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

8. MASTER AND SERVANT (§ 228*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—DEFECTIVE APPLIANCES.

Rev. St. 1911, art. 6649, providing that the fact of contributory negligence of an employé sustaining an injury shall not bar a recovery, but the damages shall be diminished, is applicable to injuries sustained by a railroad employé in consequence of a defective jack used in raising a car, where it was not the duty of the employé to inspect the jack, which was not a simple tool, and the defects therein were not obvious.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. § 228.*]

9. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

A man 26 years old, in good health, sustained physical injuries causing paralysis, indigestion, and heart trouble. His injuries were permanent, and he constantly suffered pain and was unable to perform any physical labor. *Held*, that a verdict for $11,000 would not be disturbed as excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by J. W. Odom against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff for $11,000, defendant appeals. Affirmed.

Alex. S. Coke and A. H. McKnight, both of Dallas, and Head, Smith, Hare & Head, of Sherman, for appellant. E. J. Smith, of Denison, and Freeman & Batsell, of Sherman, for appellee.

RASBURY, J. Appellee sued appellant in the district court of Grayson county for damages for personal injuries, and secured a verdict and judgment, from which appellant

has appealed. Appellee was a car repairer in the employ of appellant, and at the time he received his injuries he was engaged with other employés in attaching a pair of inside wheels to a car loaded with coal. In order to place the wheels upon the car, it was alternately raised and lowered with jacks, and while being lowered the jack collapsed, and appellee was seriously and permanently injured. The pleading in the case will sufficiently develop in our consideration of the several assignments of error.

Under its first assignment of error appellant asserts that the trial court should have peremptorily instructed the jury to return a verdict for appellant, for the reason that the jack which injured appellee by collapsing was a simple or common tool, and any defects in the same were obvious, and hence appellant was not required in the exercise of ordinary care to inspect same. It will be seen that under this assignment the question arises: Was the jack which was used in raising and lowering the car a simple or common tool? To answer this question it is necessary to review the testimony. Our labors in that respect are somewhat lightened by the admission of appellant that the facts were sufficient to sustain the finding of the jury that the jack was not in good condition, and it therefore becomes purely a question of whether under the evidence the jack was a simple or common tool.

[1] The evidence discloses, and we conclude, that the jack in use at the time of the accident was an upright iron or steel contrivance about 3 feet high, weighing 75 or 100 pounds; that it consists, in part, in its construction of a hollow frame; that into the frame fits a stem or solid piece of steel, on one side of the surface of which are cut notches or slits; that into the front of the jack we presume fits what is called the lever; that this lever or lift also enters the front of the jack, in juxtaposition to the stem, in order that the end of the lever may slide or fit into the notches or slits in the stem and by which the lever elevates the stem, which in turn elevates the car; that there is also a contrivance called a "dog," which is set, also, in the front of the jack, which by reason of a spring stands pressed against the notches or slits in the stem, and as the stem is raised by the lift or lever the "dog," by force of the spring pressing it against the stem, slips into the notches or slits and holds the stem into the place where it has been raised when the lever is relaxed. We also conclude from the evidence that for the purpose of assisting in the operation of the jack a string, rope, or cord was attached to the dog or spring, and that when it was necessary to lower the car Odom, who was operating the lift or lever, would press down upon the same so as to raise the car sufficiently to permit Fowler, who controlled the spring with the attached cord, to pull the

dog from the slit, whereupon the dog would automatically slip into the next slit or notch, lower the car to that extent, and check the fall of the car and prevent the violent and forcible uplift of the lever. It was also shown by the testimony, and we so conclude in deference to the jury findings, that it was the custom and rule of appellant to leave its jacks scattered about its yards for the use of its servants who had the right to presume that they were in good condition; that when bad jacks were discovered it was the duty of the servants to report same to the shops for repairs or to mark them bad order. Based upon the foregoing, we are unable to agree that the jack in use by appellee was a tool of that simplicity that any defects therein would be obvious and as a result relieve appellant of the use of ordinary care in inspecting same.

[2] That there is no duty resting upon an employer to inspect during their use those common tools and appliances with which every one is conversant is too well settled for argument. Railway Co. v. Larkin, 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944; O'Brien v. Railway Co., 36 Tex. Civ. App. 528, 82 S. W. 319; Pope v. Railway Co., 135 S. W. 1066. The true inquiry is, what is a common tool, and around such inquiry the difficulty in each case revolves. In the case before us, appellee, it seems to us, had neither the opportunity nor was charged with the duty of detecting the unfitness of the jack being used at the time he was injured. It was the custom of appellant to leave both good and bad jacks lying about its yards, and that the same were considered safe unless same had on them a "bad order" mark. Some of the witnesses testified that there was no rule requiring the employés to examine jacks, and others testified there was. As illustrating the testimony that sustains the finding of the jury, and as showing that any defects in the jacks were not obvious or patent, the witness Ritchie testified that he would always examine the jack to see whether or not it was in good order, and that he was directed by the foreman to make this examination. This is a circumstance which itself shows that neither the foreman nor the employé considered the jack so simple as to obviously disclose any defects; otherwise an examination would not have been necessary. As further indicating that those using the jacks did not consider them simple tools, and supporting appellee's claim that they were not, this witness further says that, when the employés desired to use a jack in lifting a car, they would place it under the car, "and, if it was not in condition to be used, we would take a piece of chalk and mark a cross upon it." He also states, "You can't tell a defective jack unless you try it on a car," thus making the use of the jack the test of its condition.

[3] A defect which develops while the tool

is being used cannot be said to be an obvious one. The witnesses Miller and Farley testified that it was the rule of appellant that employés should inspect the jack and that the employés worked under said rule, while the witness Howard said it never had been the custom for employés to inspect same; but, on the contrary, "whenever employés are using a jack, and find it in bad order, they take it to the shop for repairs," and that all jacks in the yard are supposed to be in good order, and that employés are supposed to pick up the first one they come to and use it. The jack in use by appellee and his colaborer at the time he was hurt was wholly dissimilar to any of those implements which our appellate courts have declared to be simple tools, such as a lantern globe, goose neck wrench, or chisel, the very naming of which carries with it the idea of the utmost simplicity. In fact, it occurs to us that the implement we have described is decidedly more complicated and less calculated to import notice of defects than many of the implements declared by the courts not to be simple tools. Railway Co. v. Davis, 35 Tex. Civ. App. 285, 80 S. W. 254; Railway Co. v. Patrick, 50 Tex. Civ. App. 491, 109 S. W. 1099; Freeman v. Starr, 138 S. W. 1152. So far as we have been able to determine from the evidence, the trouble with the jack in this case was a defective spring. Just how the spring worked is not clear from the testimony; but, as we have said, it must have formed a part of the dog or been attached thereto in such manner as to press the dog into the notches on the stem and hold the stem in the place where it had been lifted by the lever. Whether this spring was on the outside of the jack, where it was obvious and could be plainly seen, the testimony fails to show. From what description is contained in the record we assume it was not. From that description the spring must have been hidden within the frame, and, if not hidden, not in a place where its defects would be obvious upon picking it up for use or could be seen by appellee from the end of the five-foot lever while operating same. The spring must have been in close proximity to the place where the lever enters the frame in order to connect with the notches in the stem, and just above the lever connection must have been the dog. And hence it occurs to us that the jack as described in no sense constitutes a common or simple tool, so as to relieve the appellant of the duty of inspection, and hence of the exercise of ordinary care.

[4] Appellant's second proposition under its first assignment of error asserts that, there being no duty upon appellant to inspect the jack, and appellee having the opportunity to do so and failing to discover the defects, appellant cannot be held liable for appellee's injuries. The evidence in the case does not, in our opinion, support the proposition. In the first place, the jack was not, in our opinion, a simple tool; and, in the second place, there was neither duty nor opportunity for appellee to inspect the same. In a general way it may be said that the jacks were scattered about appellant's yard, and it was the well-established custom of the employés to use any of them which did not have upon it a "bad order" mark. Some of the witnesses testified that it was appellant's rule for the employés to inspect same before using; others said it was not. Some said a defect in a jack could not be discovered except when in use, and others denied it. Therefore the question presented by this proposition is a question of fact, which has been settled by the verdict of the jury, and as a consequence it presents no error.

[5] The third proposition under the first assignment asserts that appellant having placed upon appellee the duty of inspection, and the jack being a simple tool, he should not, for both of said reasons, be permitted to recover. Under this proposition reference is made to some evidence adduced by appellant tending to show the existence of certain rules in regard to the duty of employés to inspect the tools in use. The most that can be said of the evidence bearing upon the duty of appellee to inspect the jack because of certain rules of the company is that there was a conflict in the testimony, and that the jury sustained appellee's claim that he was not bound to inspect. The evidence, however, is hardly sufficient to raise the question, since the effect of the testimony on this point is to prove certain rules of appellant in reference to the duty of employés not to inspect, but to bring into the shop all bad order tools. Ordinarily, and as a matter of law, the duty of inspection is primarily upon the employer, and if it may be said that this duty can be shifted by rules fixed by the employer, as said by the Supreme Court, "in order to make a rule binding upon the servant, it should be brought to his knowledge." There was some testimony supporting appellant's contention about the existence of the rules; but as to the knowledge thereof on the part of appellee it was conflicting, and of but little probative force, and the jury decided the matter against appellant, which disposes of the point, since it is at best a question of fact. Adams v. Railway Co., 101 Tex. 5, 102 S. W. 906.

[6] And it appears that since the rendition of the opinion in the Adams Case, supra, the Legislature has provided a rule that forbids the master from shifting his duty of inspection in any manner, since it is provided by article 6651, R. S. 1911, Acts 1909, that "any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by the three preceding articles, shall to that extent be void," etc. The articles referred to are 6648,

6649, and 6650, R. S. 1911, the first of which provides, among other things, that carriers shall be liable in damages for injuries to employés by reason of "any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment," etc. By this statute it seems that the carrier is not permitted by contract, rule, regulation, or device whatsoever to shift the duty of inspection to an employé where inspection is required.

[7] The seventh proposition under the first assignment of error asserts that, appellant being engaged in both state and interstate commerce, appellee's cause of action accrued under the Federal Employer's Liability Act. We are asked, in effect, to sustain this assignment on the grounds: (a) That appellee admittedly was in the employ of appellant; (b) that we judicially know that appellant is engaged in both state and interstate commerce; and (c) that we further judicially know that both classes of traffic are by it handled in the same car. It is sufficient, under this assignment, to say that neither the petition of appellee, nor the answer of appellant, filed in the court below, claims or discloses that appellee was engaged in interstate commerce; nor does the evidence disclose facts sufficient to raise the issue, even if the issue could be raised without pleading same. Railway Co. v. Hawley, 123 S. W. 726.

The eighth and ninth propositions under the first assignment are dependent upon the sustaining of the seventh proposition, since they attempt to apply to facts in this case the rule of action prescribed by the Federal Employer's Liability Act, and, having determined that said act has no application under the pleading and evidence in this case, same are overruled.

[8] The seventh assignment of error asserts that the statutory rule (article 6649, R. S. 1911) that "the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé," etc., does not apply in the instant case, and that the court erred in charging the jury in terms of the statute for the reason that it was the duty of appellee to inspect the jack, and because it was a simple tool, and the defects therein obvious and patent. We have held, at another place in this opinion, that the jack was not a common or simple tool, and that appellee was not charged with the inspection of same and did not know of its defective condition, and hence, in our opinion, the assignment is not well taken.

[9] The eighth assignment complains that the verdict is excessive. We have but a limited and narrow discretion in interfering with the verdicts of juries, although the question is presented in nearly every case where the question can be raised. The appellee at the time of his injury was 26 years old, in good health, and weighed between 167 and 170 pounds. Since the injury he has weighed 50 pounds less. Dr. Wynn, one of the physicians called on trial, said he was a complete wreck; that he could not use his limbs; that his heart is bad, going from 72, normal, down to 46, and up to where it cannot be counted; that he counted the beat to 136; that he has pulled hairs from his limbs, stuck pins in him, applied electricity, and got no response, which indicates paralysis; that his muscles and flesh have worn away; that he has no digestion, those organs being destroyed; that he has vertigo, falling at times, and turns blind; that he has myelitis, a spinal trouble, at the seat of the nerves; that he cannot sleep without something to produce it, presumably a narcotic; that he suffers from nausea of the stomach and indigestion; that his limbs are reduced half or more from normal; that his injuries are permanent and he suffers pain all the time and is unable to perform physical labor; that in his opinion the conditions described were produced by some species of personal violence; and in effect that same could have been produced by the injuries described in appellee's petition.

Dr. H. C. Fleming and Dr. E. C. Hall, both called as witnesses, corroborate in nearly every detail the testimony of Dr. Wynn, and state that appellee's trouble grew progressively worse; Dr. Fleming stating that he is fixed in the opinion that his injuries are permanent, and gives it as his opinion that if the nerve trouble does not kill him he is destined for paralysis. The testimony of the doctors is strongly corroborated in all respects by the appellee, his wife, father, and the witness Howard. If the above testimony is contradicted at all, it is by evidence that is at most negative and of but little probative force. In view of the testimony, it is clear that this is not a case which would warrant any interference on our part on the ground either that the verdict is excessive or that the jury were influenced by sympathy for appellee or anger toward appellant, and hence the assignment cannot be sustained.

Appellant's brief contains many assignments of error that raise the same question, and for that reason we have not discussed them seriatim; but we have attempted to consider all the issues raised by each particular group.

Finding no reversible error in the record, the judgment of the trial court entered upon the verdict of the jury is affirmed.