124   641
f151  ¹249

124   641
f158  ²317
j158  ²320

## MANN *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. MASTER AND SERVANT — DEFECTIVE APPLIANCE — PROMISE TO REPAIR—ASSUMPTION OF RISK—QUESTION FOR JURY.

An employé was injured by a defective valve in a steam-pipe. The employer, having been advised of the defect, promised to repair it as soon as his workmen, who were about to go away, should return. The repairs were not made, and, about 30 days after the promise, such employé was injured. *Held,* that whether the employé had the right to rely on the promise to repair at the time he was injured was for the jury.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE.

An employer promised an employé in charge of a pump to repair· a defective valve in a steam-pipe, which permitted steam to escape into the cylinder of the pump, as soon as his workmen should return. At this time a new pump was being erected. The valve was not repaired, and, about 30 days after the promise, the employé, while reaching his arm between the spokes of the balance-wheel to adjust an appliance, was injured by the unexpected starting of the pump. The escaping steam, while sufficient to start the old pump, had not started the new one until the occasion of the injury to the employé. *Held,* that whether such employé was so reckless as to preclude him from asserting a reliance on the promise to repair was for the jury.

Error to Lenawee; Chester, J. Submitted June 6, 1900. Decided September 18, 1900.

Case by Hiram Mann against the Lake Shore & Michigan Southern Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Watts, Bean & Smith,* for appellee.

[1] As to the rights of a servant who continues work on the faith of his master's promise to remove a specific cause of danger. see *Illinois Steel Co.* v. *Mann,* (Ill.) 40 L. R. A. 781, and note.

MONTGOMERY, C. J. The plaintiff was in the employ of defendant for many years. For some years prior to 1893 his duties consisted, in part, in running a steam pump at Hudson. This steam pump was located in a large well, about 30 feet below the surface, and steam was transmitted to the cylinder of the steam pump through a small iron tube. The pump was set in motion a number of times a day. To start the pump, it was necessary to go down a flight of stairs, to the platform on which the pump rested. In the last of February, 1893, a change had been made in the pump. At this time the platform was so arranged that the floor had to be cut, to allow the balance-wheel to clear the floor and revolve. The testimony on behalf of the plaintiff tended to show that the throttle-valve on the steam-pipe had become worn to such an extent that when closed it leaked steam into the cylinder of the pump; that the cylinder-cock was closed by raising the lever of the plug to a perpendicular, and opened by dropping the lever; that the cylinder plug had become worn, so that the lever would jar down, and so open the cock and let the steam out of the cylinder; that on the 26th of March, 1893, he heard the steam escaping into the well, and went down to attend to it; that he reached his arm through the spokes of the fly-wheel to tighten the nut on the end of the plug of the cylinder-cock; that, because of the defective condition of the throttle-valve, steam escaped into the cylinder in sufficient quantities to start the pump going; that his arm was caught by the spokes of the fly-wheel, and his hand held against the cylinder and badly burned. The testimony also tended to show that the defendant's agent in charge of the work had, on the occasion of putting in the new pump, promised to remedy the defect in the throttle-valve; that he stated that the men who were engaged in putting in the new pump had to go to Detroit, and as soon as they returned he would have a new throttle-valve put in. The testimony also tended to show that, while the steam escaping through the defective throttle-valve had been sufficient

to start the old pump, the new had not (possibly because the castings were new) been so started until the occasion in question. The defendant contends that the plaintiff was guilty of contributory negligence, and that, knowing the condition of the pump and the valve, he assumed the risk. The plaintiff contends that he had the right to rely on the promise to repair.

It is clear that the plaintiff assumed the risk of injury, unless it be held that, under the evidence, it was proper to submit to the jury the question whether he had the right to rely on the promise to repair, and whether, as an ordinarily prudent man, he, in view of that promise, was justified in continuing to perform the service in the manner in which it was performed. Indeed, the learned counsel for the plaintiff apparently concede this. In determining the effect of this promise, two questions are prominent:

*First.* Was the condition which presented itself to plaintiff so obviously a dangerous one that an ordinarily prudent man would not, even in reliance on the promise of defendant to repair, attempt what he attempted?

*Second.* Had the plaintiff the right to rely upon the promise at the time he received his injury?

Considering the second question first, it becomes important to learn just the nature of the promise to repair. Frank Mann, the plaintiff's son, testified to this conversation as follows:

"Just repeat what your father said to him about it, and what Mr. Toullerton's reply was.

"*A.* Why, he told him that the throttle-valve ought to be fixed; it was leaking badly, and it was not safe; that he wanted a new one. Mr. Toullerton says: 'The boys have got to go to Detroit tomorrow; they must go; and as soon as they get back we will have it fixed up,—xed up right away.'"

On cross-examination he testified as follows:

"What did Mr. Toullerton say to that?

"*A.* He told him that the boys would have to go to Detroit tomorrow, and they must get it to work, in order to get to pumping, and as soon as they came back he

would have it put in, and fixed right up.    I don't remember that he gave any time as to how long the boys would be gone to Detroit."

Leonard Howard, called by plaintiff, testified as follows:

"I happened in there when they were having their conversation about the valve.    I heard Mr. Mann tell him that the valve was in bad shape, and that they ought to have a new valve; and the old man told him that they had to get pumping as soon as they could, and that the boys had got to go away,— I think, to Detroit,— and as soon as they could get back they would fix it up."

A period of about 30 days elapsed after this promise, and before the injury.    It is contended that it should be held, as matter of law, that the plaintiff had, at the time of the injury, no right to rely upon the promise of defendant to repair.    The period during which an employé may continue his service in reliance upon a performance by the master of a promise to repair is generally held to be a reasonable time.    Some cases construe this to be the time reasonably necessary to make the repairs.    *Harris* v. *Hewitt*, 64 Minn. 54 (65 N. W. 1085).    But the better class of cases construe a reasonable time to mean such a period after the promise as would preclude all reasonable expectation that the promise might be kept, or, stated in another way, the time which would elapse while the servant is reasonably expecting the promise to be performed. *Hough* v. *Railway Co.*, 100 U. S. 213; *Counsell* v. *Hall*, 145 Mass. 468 (14 N. E. 530).    The question is in most cases for the jury.    We think the present case no exception.    The length of time the defendant's workmen were to be detained at Detroit is not known.    The plaintiff testified that he daily expected their return; and we are not prepared to hold, as matter of law, that he may not have reasonably expected a performance of the promise any time up to the date of the injury.

Nor do we think we should hold, as matter of law, that the course of the plaintiff was so reckless as to preclude

him from asserting a reliance on the promise to repair. The new machine had not been set in motion by escaping steam prior to the time of the accident, and the danger was not so obvious that we can characterize the plaintiff's attempt to tighten the nut as reckless.

Other questions are presented in the brief of counsel. The foregoing discussion is controlling of the main features of the case, and answers most of the defendant's contentions. The assignments of error have all been considered, and no error is discovered.

The judgment is affirmed.

The other Justices concurred.