GORREY v. W. F. HURD CO.

1. MASTER AND SERVANT—EVIDENCE OF CUSTOM—GUARDS—PERSONAL INJURIES—NEGLIGENCE.

Where plaintiff claimed that the superintendent of defendant had promised him to repair a defective sticker machine near his place of work, and that the defendant failed to make the promised repairs to the machine, which threw a splinter into plaintiff's eye, and it was apparent that plaintiff knew of the dangerous condition, evidence that other manufacturers provide hoods for sticking machines of that kind to protect the side heads, was not material, plaintiff failing for other reasons to establish liability.[1]

2. SAME.

Held, that the testimony showed plaintiff knew the exact situation and might have protected himself from injury, but that he did not regard the alleged defect as dangerous to him.

Error to Wayne; Van Zile, J. Submitted June 10, 1913. (Docket No. 65.) Decided September 30, 1913.

[1] The question of the liability of a master for injuries caused by splinters flying from hammers or chisels, punches, and other similar tools is treated in notes in 13 L. R. A. (N. S.) 670; 30 L. R. A. (N. S.) 800; and 40 L. R. A. (N. S.) 832.

Case by Michael Gorrey against the W. F. Hurd Company for personal injuries. Judgment for defendant upon a directed verdict, plaintiff brings error. Affirmed.

*Samuel E. Jones,* for appellant.

*Sherman D. Callender,* for appellee.

MOORE, J. The plaintiff was a woodworker employed for four or five years by defendant on a sticker machine. He claims to have received an injury to the eye, not from his machine, but one adjoining it and about four feet away. This suit was commenced by declaration. Omitting its formal parts, the material averments are:

"Whereupon it became and was the duty of said defendant corporation to furnish the said plaintiff with reasonably sound, safe, and suitable machinery, appliances, fixtures, and place for the making and manufacture by said plaintiff of said woodenware as aforesaid, while so employed by said defendant as aforesaid. Yet the said defendant, not regarding its duty in that behalf, without the consent of the plaintiff, furnished and operated a certain machine in its factory, to wit, a sticker machine, for use by its employees in the aforesaid factory, which sticker machine was not reasonably sound, safe, and suitable for the purpose aforesaid, but on the contrary thereof was defective and wholly unsound and unsafe in this, to wit: That the aforesaid sticker machine was not provided with a sheet iron hood over the knives attached to the heads of the sticker machine to protect employees from slivers and other material thrown out, whereby and by means of the premises, and while the said plaintiff, with due care and caution upon his part, was operating an adjoining machine, there being a space of about four feet between the machine plaintiff was operating and the aforesaid sticker machine, and in the employ of said defendant, as aforesaid, without any fault or negligence upon the part of plaintiff, he was injured by having his left eye injured and destroyed by being struck in the

left eye by a flying sliver thrown out from the aforesaid sticker machine, which injury to the left eye affected and impaired the vision of the right eye.

"And plaintiff avers that the place or shop where plaintiff was required and commanded to work in by the superintendent of the defendant corporation, on or about the 4th day of April, 1911, was not a safe place to work; that the aforesaid sticker machine which injured him was an old and obsolete make and a dangerous machine and was not provided with a sheet iron hood over the knives attached to the heads of the sticker machine, as is the custom so to do on similar machines.

"And plaintiff avers that the sticker machine which injured him on the 4th day of April, 1911, was not protected or guarded as ordered by the State factory inspector and as required by the statutes of the State of Michigan, to wit, section 15, Act 285, of the Public Acts of 1909.

"And plaintiff avers that the sticker machine which injured him on April 4, 1911, was defective as aforesaid, and that the defect was known to the defendant corporation, and plaintiff avers that on March 31, 1911, he called the attention of the superintendent of the defendant corporation to the defective condition of the aforesaid sticker machine which injured him, and the superintendent of the defendant corporation promised to repair and make safe the aforesaid sticker machine and ordered plaintiff to continue work, and plaintiff, relying upon the promise to repair the defects on the aforesaid sticker machine, continued to work for a period of three days, when plaintiff was injured as aforesaid through the neglect of defendant corporation to repair and make safe the sticker machine as aforesaid, whereby the plaintiff became and was sick, sore, lame, and disordered and so remained and continued for a long space of time, to wit:"

The trial disclosed that hoods had been put over the upper and lower knives of the machines, but that none were over the small sideheads that shaped the edges of the article planed, and no factory inspector had ever directed that hoods should be over them.

The trial judge was of the opinion that plaintiff had failed to make a case and directed a verdict in favor of defendant.  The case is brought here by writ of error.

We quote from the brief of counsel:

"Assignments of error 1, 2, 3, 4, and 5, all relating to the same matter, will be discussed together.  Witness Eikoff was asked some questions, in relation to the custom of other factories using the same kind of machine, as to placing hoods over the side heads over said machines.  The court sustained an objection thereto, because the court maintained that immaterial testimony given by a witness in behalf of the defense could not be impeached by plaintiff.  If the testimony were immaterial, there is no doubt but what that is the rule; but the question here before this court is:  Can custom be shown?  Or, in other words, is it competent to show that similar machines used by other manufacturers, that it is the custom by them to protect such machines so that workmen are safe from injury by reason thereof?  I contend that the testimony is material.  And in support of that contention I desire to cite the following cases:"

The averments of the declaration and the proofs offered on the part of the plaintiff are an answer to this contention.  The plaintiff knew and had known just the condition of the machine, and his claim is that he continued to work, relying upon a promise to place a hood over the side knives.  He gave proofs tending to support that claim.  The foreman of the defendant swears the subject was never mentioned to him.

Under the issue as framed, the question of custom was immaterial.  We again quote from the brief of counsel:

"As to the last assignment of error in this case; that is, in the granting of motion of defendant's counsel in directing a verdict for defendant.  It is a well-settled principle of law in this State that an employee being injured in the course of his employment by

machinery which has become dangerous for want of repair and which the principal promises to repair on being notified of its condition, and the employee relying upon the promise to repair continues his work and is injured by reason of the defect while so continuing at work, it becomes a question for the jury as to whether or not the employee had a right to rely upon the master's promise to repair and whether as an ordinary prudent man he was justified in continuing to perform the service in the manner in which it was performed. In support of this proposition the court is cited to the following authorities: *Mann* v. *Railway,* 124 Mich. 641 [83 N. W. 596]; *Schlacker* v. *Mining Co.,* 89 Mich. 253 [50 N. W. 839]," and other cases.

There might be much force in this contention if the record was different. Plaintiff preferred no requests to charge. The trial judge was not told plaintiff desired this phase of the case submitted. The only assignment of error that can be said to relate to it reads as follows:

"That the court erred in charging the jury to render a verdict against the plaintiff and in favor of the defendant as requested by motion of defendant's attorney."

The case was very carelessly tried. However, the testimony of the plaintiff does disclose that he had a pair of large eyeglasses which he used to protect his eyes when grinding his tools at the emery wheel. His testimony in part is:

"*Q.* Did you wear them?

"*A.* If there was very much dust I would put them on.

"*Q.* Did you have them on on the 4th of April, 1911?

"*A.* No, sir.

"*Q.* Why not?

"*A.* Because there was no dust; I had no occasion to.

"*Q.* No dust that morning?

"*A.* No, sir. *   *   *

"*Q.* You had them with you in your pocket on the 4th of April, when you were running this machine; that you did not put them on because you did not think you needed to put them on?

"*A.* No, sir."

The record also shows that a board had been prepared which, if put in place between the machines, would have intercepted the shavings and dust and had been used by the operator of the other sticker machine, and that plaintiff knew of this board and its use but did not use it.

The claim now made by the plaintiff is, to say the least, a strange one. He says a sliver struck him in the eye, and that one of his fellow employees pulled it out. The fellow employee testified that he never heard of a sliver but at times had been requested to remove dust, which he had done by rolling the lid of the eye over a lead pencil. The plaintiff never made complaint to the defendant, or any of its officers, that he had a claim against it. He testified in part as follows:

"*Q.* And then from the time that you got hurt until about ten weeks you were not at the factory?

"*A.* I had a small pay coming to me and about two or three weeks after I was hurt I went down and got paid, I had a few days' pay coming and I went down and got it.

"*Q.* That would be about three weeks after April 6th?

"*A.* Well, it may be; yes, sir; it was because I did not leave the house. I was from the doctor's to the house all the time.

"*Q.* And the day when you say you got this sliver you were at the factory only once and that is when you went down to get your pay?

"*A.* I was at the factory to get my pay and then when I got kind of well I went back to the factory to go to work and that was Tuesday.

"*Q.* How long after you got the sliver did you go down there?

"*A.* It must have been about 10 or 12 weeks after I went down there, I know this day.

"*Q.* After you got the sliver?

"*A.* Yes, sir.

"*Q.* That was about 10 or 12 weeks?

"*A.* To my best estimation, I was not fit to work, but I was going to try it.

"*Q.* And who did you see when you were discharged?

"*A.* William F. Hurd.

"*Q.* William F. Hurd, president of the company?

"*A.* Yes, sir.

"*Q.* And he told you he did not need your services any more?

"*A.* I started to work on the machine.

"*Q.* Did he dismiss you?

"*A.* Yes, sir; he said, 'You are not wanted.'

"*Q.* Up to that time had you consulted an attorney about your claim?

"*A.* No, sir; not up to that time.

"*Q.* Never had consulted any one about your claim previous to that time that you were discharged?

"*A.* Until after I was discharged.

"*Q.* And about when was it, as you remember it, that you first made up your mind you wanted to make a claim against this company?

"*A.* After I was discharged and I saw the situation I was in.

"*Q.* After you were discharged?

"*A.* Yes, sir.

"*Q.* After you were discharged did you make up your mind you wanted to sue this company?

"*A.* About a month or two after.

"*Q.* And then that would be along in October?

"*A.* I could not say for sure, I know I was discharged and I thought I suffered 20 weeks at home idle and a doctor bill and I thought I could not stand for all that.

"*Q.* If you had not been discharged you would not have done anything about it?

"*A.* No, sir."

No one understood the situation better than the plaintiff. He had worked for several years where he was when hurt. He did not regard the situation as

dangerous. If he had, the use of his glasses would have removed the danger, or the use of the thin board between the machines would have prevented any injury. We cannot say an improper result was reached in this case.

Judgment is affirmed.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.