CALVIN CLARK v. THE JOHNSON COUNTY TELEPHONE COMPANY, Appellant.

**Master and servant:** ASSUMPTION OF RISK: INSTRUCTION. Where a
1 servant in an action for injuries alleges generally that the risk assumed by him was not of such dangers as were incident to his employment, which is met by a general denial, the question of assumption of risk is sufficiently presented by an instruction that such risks are those which as a matter of law are necessarily incident to the employment, and reasonably incident to a discharge of the servant's duties.

**Same.** An instruction that the burden is on the employer to show
2 assumption of risks incident to the employment, and in the same connection that the master must furnish a reasonably safe place for the servant to work, is held misleading; as tending to confuse the distinction between an assumption of the obvious risks of the employment with the assumption of those risks incurred by continuing the service with knowledge that the master had failed to take proper precaution for the servant's safety.

*Appeal from Johnson District Court.—* HON. O. A. BYINGTON, Judge.

FRIDAY, JANUARY 17, 1908.

ACTION to recover damages for personal injuries suffered by plaintiff while in the employ of the defendant engaged in repairing defendant's telephone line. Verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*Milton Remley* and *Clark & Byers,* for appellant.

*Baldwin & Fairchild,* for appellee.

McCLAIN, J.— As a result of a sleet storm which occurred January 19, 1904, defendant's lines of telephone wires in Iowa City became heavily coated with ice, badly broken and dangerous as well to the public using the streets as to the employés of the company in making the necessary repairs. Plaintiff, a young man nineteen years of age, with some experience in constructing rural telephone lines, but not in repairing or reconstructing lines under the unusual conditions existing, and who had during some months previous been in the employ of the defendant as " trouble man," was directed by the superintendent to work as one of a gang of laborers under the direction of one Leedom as foreman in repairing the damage done to the defendant's lines by the storm, and on January 21st he proceeded with other employés under the direction of Leedom to the corner of Burlington and Linn streets, where a " lead " of wires running south on the west side of Linn street was conducted to the eastward along the south side of Burlington street, extending on the latter street a distance of more than a mile. Plaintiff and two other employés, under the direction of Leedom, went up three separate poles on Burlington street to cut the wires on the lower two cross-arms; the poles each having four cross-arms, each cross-arm carrying twelve wires. A part of this " lead " of wires consisted of two messenger wires and a cable supported on one of them. Leedom directed these employés to cut the wires one at a time alternately on each side of the cross-arms, with a view of preventing a greater tension on one side of the pole than on the other, and assured plaintiff that in performing the work in this manner he would be entirely safe. The employé who had climbed up the one of these three poles which was farthest to the west commenced cutting first, and

after plaintiff had cut a few wires from his pole, it, with two poles west of it, broke off some distance from the ground, falling to the eastward. It seems that some of the telephone wires were already broken down between the poles on which the employés were cutting wires, and the pole at which the " lead " of wires was conducted last from the west side of Linn street, which pole, being securely supported by guy wires, did not fall. The evidence tended to show that the breaking of the poles on which the employés were working was due to the tension of the wires to the eastward heavily loaded as they were with ice, which caused the messenger wires to break west of the pole on which plaintiff was working. The pole next east of the one on which plaintiff was at work did not break, but its top was pulled over to the east. The breaking of the pole on which the plaintiff was at work caused him to be precipitated to the ground, and by reason of the fall he sustained severe injuries for which he seeks to recover damages. Plaintiff alleged, and his evidence tended to prove, that under the conditions it was dangerous to work upon the pole on which he was working and under existing conditions, not by reason of the weight resting on each pole, but by reason of the tension on the pole caused by the strain of the wires running eastward; and that this danger was such that in the exercise of ordinary care the foreman of the work should have appreciated it, and provided against it by " lacing " the poles before proceeding to cut the wires. The " lacing " would have consisted in attaching guy wires to the poles so as to prevent their being broken by the strain. This " lacing " would have required the employés to climb the poles; but, if the operation had been carried out before any of the wires had been cut, it would have been less dangerous than to climb the poles and cut the wires without such " lacing." It is claimed for plaintiff that he was not aware of the danger incident to the cutting the wires from the poles without such additional supports being furnished; and that, there-

fore, he did not assume the risk of such employment, and was not guilty of contributory negligence. The defendant specially alleged that plaintiff knew the conditions of the place where and the manner in which he was performing the service for the defendant at the time of his alleged injuries, and that with full knowledge of all the conditions and the dangers incident to the performance of the work, he undertook the service, and by continuing in the employment and in the performance of the work with such knowledge on his part he assumed all risk incident to such employment in the condition in which the poles, wires, and appliances then were. There was also a general denial of the averments of plaintiff's petition.

It is conceded that plaintiff assumed the risk incident to his employment so far as such risk was known to him or should have been appreciated by him in the exercise of reasonable care, and that the question whether

1. MASTER AND SERVANT: assumption of risk: instruction.

his injuries resulted from the risk thus assumed was raised by the general denial in defendant's answer. One complaint made of the instructions is that this issue was not submitted to the jury, but we think this complant is without foundation. The court specifically told the jury to consider the subject of assumed risk, meaning the " risks which the law holds that an employé assumes which are necessarily incident to an employment involving danger," and the jury were further told in the same instruction that " a person engaged in any occupation assumes such risks as are reasonably incident to the proper discharge of his ordinary duties  .  .  .  . of which he is aware or which he reasonably ought to apprehend." As the general denial did not, of course, call specific attention to the assumption of risk incident to plaintiff's employment, and as the petition negatived such assumption of risk only in a general way by alleging that the conditions and the dangers involved were not known to the plaintiff, but should have been known to the defendant, we do not think

that it was necessary to more specifically submit the issue as to plaintiff's assumption of the risk of his employment. If the jury paid attention to the language of the instruction as above quoted, they must have considered whether the injury was the result of risks incident to the proper discharge of plaintiff's duties as an employé, and they were told that "if you find that plaintiff has established that he did not or reasonably should not apprehend" the increased danger due to the strain upon the pole resulting from the cutting of the wires under the conditions existing at the time of the injury, "and that the foreman, Leedom, did know or should have known the same, and should have known that plaintiff did not apprehend it, then it would be the legal duty of said foreman to warn plaintiff of such danger before sending him up the pole, and failure to do so would constitute negligence." The real issue arising under the general denial with reference to the allegations of the petition as to want of knowledge by plaintiff of the dangers due to the strain on the pole was as to whether defendant was negligent in not warning the plaintiff thereof. If there was no negligence on the part of defendant in this respect, then the general assumption of risk of the employment was immaterial. We think the instruction sufficiently covered this question. So far as we can discover, this court has never held that as distinct from contributory negligence, assumption of risk must be specifically negatived by the plaintiff in his allegations and evidence. In attempting to establish defendant's negligence in not giving him warning, it may be necessary for him to show that, without such warning, he was not bound as a reasonably prudent person to appreciate the danger from which his injury resulted, but the issue, after all, is as to whether defendant was negligent for without allegation and proof of negligence in failing to give warning there would be no issue in this respect.

The chief complaint on the part of appellant is, however, that in the same instruction in which the general rule

as to assumption of risks reasonably incident to the employment was stated, the jury was further told that " it is also the duty of the master to provide a reasonably safe place in which to work; that is, it must be as reasonably safe as the character of the work will permit. Now, the defendant has interposed as a defense that the plaintiff assumed all the risks which were naturally incident to the employment, and the burden is upon the defendant to establish such defense." It is argued that by this language confusion would naturally arise in the minds of the jurors between the assumption of risk of the employment and the specific assumption of risk by the plaintiff in continuing in the employment with knowledge that defendant had failed to take proper precautions for his safety by providing against the danger of the pole being strained to the eastward. That there is a distinction between the assumption of risks of such character that no warning thereof by the defendant is necessary and the assumption of risk resulting from the negligence of the defendant in failing to provide against the dangers of the place in which the employé is put to work is fully recognized and clearly stated in *Martin v. Des Moines Edison Light Co.*, 131 Iowa, 724 (a case decided since the trial of the present case in the lower court), where this language is used: " If the servant brings an action against his master, alleging negligence, and succeeds only in proving that the injury he has sustained was the result of some risk naturally incident to his employment, he fails to recover because he has failed to prove negligence. The very expression, ' risks naturally incident to or inherent in the employment,' exclude *ex vi termini* the idea of negligence; while ' negligence,' as applied to the master, conveys with equal certainty the idea of a risk not incident to or inherent in the employment, but arising from the failure of the master to exercise the degree of care which the law requires of him for the safety of the servant. Now, generally speaking, the law never holds the servant to take upon

*2. SAME.*

himself the risk of injury from such failure of duty on the master's part, but to this proposition there is a well-recognized exception. While the servant in entering upon and exercising the employment may rightfully take it for granted that the master's duty with reference to his safety has been and will continue to be performed, yet if he knows that the master is, in fact, negligent in any respect, or if such negligence is so patent or obvious that as a person of ordinary capacity he ought to know it and appreciate the danger therefrom, and with such knowledge he continues in the service without any promise on the part of the master to remedy or remove the defect, then he is said to have ' assumed the risk ' of the master's negligence and cannot recover for injury resulting to himself therefrom." We think that in the present case, as in the case just cited, there was a failure on the part of the trial court to distinguish between these two forms of assumption of risk; and that the direction to the jury that " the burden is upon the defendant to establish such defense " was calculated to mislead the jury into the belief that some burden rested upon the defendant to show that plaintiff assumed the risks of the employment so far as they should have been known to him as a reasonably prudent man under the circumstances in order to require defendant to give him warning thereof. As said in the case last cited:  " The instruction clearly places upon the defendant the burden of establishing the assumption by the deceased of the risks ordinarily incident to the employment in which he was engaged, although in the preceding and the same instruction the jury was properly told that the deceased is held to have assumed such risks as a matter of law. The error of the instruction in the form here presented is clearly of a prejudicial character."

Many other alleged errors in the giving of instructions are relied upon for appellant, but, as it seems to us, none of these are well taken. The phraseology of the instructions is not in all respects free from reasonable grounds of criti-

cism, but, as the instructions will not probably be given in the same form on another trial, we do not think it necessary to review them further.

For the error pointed out, the judgment is *reversed*.