### OHIO & PITTSBURGH MILK CO. v. FEHL.

(Circuit Court of Appeals, Third Circuit. May 1, 1911.)

No. 28.

MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Defendant milk company ran some 70 or 80 wagons, keeping the horses in a barn, where it employed a stable boss and harness repair man. Plaintiff was a driver of one of the teams, which became frightened and ran when the lines broke, and he was seriously injured in the wreck. The lines were old and had been mended. The horses plaintiff had usually driven were gentle, but one had been changed; and plaintiff complained to the stable boss that the lines were not strong enough, but the boss examined them, and told him to use them for a few days longer. *Held,* that the danger was not so obvious that plaintiff could be charged with contributory negligence as matter of law in accepting the assurance and promise of the boss, but that the question was properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by William Fehl against the Ohio & Pittsburgh Milk Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

H. V. Blaxter (Lazear & Blaxter and Joseph Stadtfeld, of counsel), for plaintiff in error.

T. M. & R. P. Marshall and Edmond Englert, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and McPHERSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below William Fehl, a citizen of the German empire, brought suit against the Ohio & Pittsburgh Milk Company, a corporation of Pennsylvania, for damages sustained by him through its negligence. He recovered a verdict, on which the court entered judgment in his favor. Whereupon the defendant sued out this writ, and assigned for error the refusal of its motion for judgment non obstante veredicto and the denial of its point for binding instructions.

The defendant carried on an extensive milk and ice cream business in the city of Pittsburg, and employed Fehl as a driver of a delivery wagon. It has some 70 to 80 teams, and a stable boss to oversee and inspect such teams, their harness, and the stable. Under him was a harness repair man. The testimony on Fehl's part tended to show as follows: His team consisted of two horses, which he easily controlled. The accident to him was on November 27th. In April preceding his lines broke, and on complaint to the stable boss they were mended and returned to him with a new set of harness. These same lines were broken, mended, and returned to him three times during the summer. He says the lines were thin and cracked, but he did not consider them dangerous to drive with his quiet team. During part of the intervening time he had been using a new pair of lines, which had been given him in July. These he was using on October 5th, when they were taken away without his knowledge for use in a contemplated parade, and the old mended lines substituted. He learned this about 5 o'clock in the morning, when he started out on his delivery route. On his calling attention to the fact, he was told by the night watchman that the stable boss had left word he should go ahead and use the old lines. Fehl continued to use them on his team for three or four days, when he saw the stable boss and called his attention to the change. The latter then told him he should have his lines back as soon as the parade of floats in which the defendant's teams were to take part was over. Later Fehl was given a mule to drive with one of his horses, and about three days before the accident he got to see the stable boss and told him, "Them lines is no good to use on that mule." Fehl testified that he thought it was dangerous to use them with the mule, but that the stable boss "looked at the lines. He told me to go ahead and use them, that he would get me another in a day or so. I used them on his promise. I thought he knew more about lines than I did." He continued to use them for the next two or three days with the mule. On the morning of the accident an automobile came up behind his team, the mule frightened and bolted, and the team ran. In Fehl's efforts to control it the lines broke. He then got out on the tongue and tried to get hold of the check rein. He was unable to do so, and the

team straddled a telegraph pole, and Fehl was crushed between it and the wagon, and badly injured.

Upon evidence on behalf of the plaintiff tending to show the above facts, the court submitted the case to the jury in a charge to which no objection is made; but it is alleged that it committed error in allowing it to go to the jury at all. To sustain this contention it must be held as a matter of law that driving lines are such a simple appliance and their unsafe condition such a patent fact to all persons that the plaintiff was unquestionably guilty of contributory negligence in using these particular lines. We cannot agree to this contention.

While, as said in Musser v. Brown, 126 Fed. 142, 61 C. C. A. 210, "The law will not permit a person to place himself consciously in a situation where the danger of suffering loss of life or limb is great and imminent," yet the present case was not one for the application of that rule. The lines were not palpably unsafe; for Fehl regarded them as safe for his horses, and he used them successfully for three days with the mule. They had been mended. They were examined by the stable boss, and a jury might well conclude that Fehl was not guilty of negligence in relying on the judgment and advice of a man presumably better qualified than himself, and one whom his employer had placed in authority for the purpose of controlling the use of its equipment. That person, knowing the mule and examining the lines, was acting in the express line of his duty, and the idea is not to be tolerated that either the stable boss or the repair man sent Fehl out to risk his life with a pair of obviously unsafe lines. Moreover, driving lines are not articles which all persons would agree in regarding as safe or unsafe. Size, texture, age, pliability, appearance, the depth of surface cracks, the use of proper grease—all enter into a fair estimate of a line's safety. The use to which they are to be put is another factor. Lines which it would be imprudent to use with a spirited team in a light vehicle might be safely used with a draft team in a heavy wagon provided with a brake. These and many other elements, including the disposition of the team and the skill and capacity of the particular driver, are all factors which enter into a just estimate of whether lines in ordinary use are reasonably safe for further use by particular drivers for particular teams. It would therefore seem that these modifying elements and the circumstances of each particular case unite to make the question of the safety of a particular pair of lines one that should be passed on by a jury, and not a settled hard and fast general rule of law.

Further, the question of the safety of these lines was affected by the other factor we have noted. This stable was so large as to call for the service of a stable boss and harness repair man. Presumably they were competent and careful. The lines had been repaired, put out again for service, and shortly before the accident were examined by the stable boss in the light of complaint by the driver; and the fact that he asked Fehl to resume their use tended to show that Fehl was not reckless in using them again for a brief, temporary service. It follows, therefore, that these considerations make the question of his alleged contributory negligence one on which men might well differ.

Indeed, we are clear the court below would have trenched on the province of the jury, had it undertaken to decide that the dangerous character of the lines was unquestioned, and the plaintiff's use of them contributory negligence.

The general principle applicable to such cases as the present is thus stated in Hough v. Railway Co., 100 U. S. 225, 25 L. Ed. 612:

"It was for the jury to say whether the defect in the cowcatcher or pilot was such that none but a reckless engineer, utterly careless of his safety, would have used the engine without its being removed. If, under all the circumstances, and in view of the promises to remedy the defects the engineer was not wanting in due care in continuing to use the engine, then the company will not be excused for the omission to supply proper machinery, upon the ground of contributory negligence. That the engineer knew of the alleged defect was not, under the circumstances and as matter of law, absolutely conclusive of want of due care on his part. Ford v. Fitchburg Railroad Co., 110 Mass. 261 [14 Am. Rep. 598]; Laning v. N. Y. Central Railroad Co., 49 N. Y. 521 [10 Am. Rep. 417]."

The judgment below is therefore affirmed.