O. C. SWAIM, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**NEGLIGENCE:** Proximate Cause—Definition.  "Proximate cause"
1 is probable cause, and the proximate cause and the proximate consequence are distinguished from a remote consequence, as one that succeeds naturally, in the ordinary course of things. This is true although the result produced may not have been anticipated, and notwithstanding that some other cause operates with defendant's negligence to produce the injury, if the injuries resulting are traceable, in some material degree, to his want of care.  The fact that such negligence was the proximate cause of an injury may not be established on mere conjecture, although, when there is evidence from which such proximate cause may reasonably be found, the question is for the jury.

**MASTER AND SERVANT:** Duties and Liabilities of Master—De-
2 fective Tool.  Evidence reviewed, in an action by a section hand for injury to his eye, caused by a fragment of stone, chipped off by a blow by a tamping pick in the hands of another employee, and held a question for the jury whether the failure to keep the head of the pick squared off, instead of rounded on the face, was the proximate cause of the injury.

**MASTER AND SERVANT:** Assumption of Risk—Master's Negli-
3 gence.  The servant assumes the risk naturally incident to his employment, but is not presumed to assume the risk created by a master's negligence.  This is an affirmative defense, which the master must plead and prove.

**MASTER AND SERVANT:** Duties and Liabilities of Master—Safe
4 Tools.  A master must use reasonable care to furnish a servant suitable and safe tools to work with, and this duty extends to simple tools;  but where the employer has performed his initial duty in furnishing such simple tools, he may rely upon the servant to discover any manifest defect therein, and is excused in such cases from the general duty of inspection, and cannot be charged with negligence in failing to discover a defect which the servant could easily discover, nor for failing to make repairs which the servant might reasonably be expected to make.

MASTER AND SERVANT: Assumption of Risk—Defective Tools —Waiver. If a servant making use of a tool, whether simple or complicated, knows that it is defective, and knows, or as a person of ordinary intelligence or prudence ought to know, that the instrument is thereby rendered dangerous, and remains in such employment, and continues to use same without objection or protest or promise of repair, he waives the master's tort, and assumes the risk.

MASTER AND SERVANT: Duties and Liabilities of Master—Manifestly Defective Tool. Where the alleged defect in a simple or common tool was of a patent or manifest character, the servant cannot deny knowledge of that fact, or complain of the master's failure to warn him.

MASTER AND SERVANT: Assumption of Risk—Defective Tools— Promise to Repair. When the servant notifies the master of a defect in the instrumentality furnished him, and repair of such defect is promised to him, he may continue 'in the employment for a reasonable period, awaiting the repair, without assuming the risk, unless the danger is of such imminent and dangerous character that no ordinarily prudent person would take such chances of injury; and the servant is not excluded from the benefit of this rule by the fact that the defects are in what are called simple tools.

MASTER AND SERVANT: Assumption of Risk—Jury Question. Evidence reviewed, in an action by a section hand, injured in the eye by a fragment of stone thrown by the use of a rounded tamping pick, after the foreman's promise to repair the tool, and held a question for the jury whether he had assumed the risk, and whether he was guilty of contributory negligence.

MASTER AND SERVANT: Duties and Liabilities of Master—Repair of Defective Simple Tool. Upon complaint of the servant, it is the duty of the master to examine the condition of simple tools and repair any defects.

*Appeal from Appanoose District Court—C. W. VERMILION, Judge.*

JANUARY 17, 1919.

OPINION ON REHEARING OCTOBER 22, 1919.

ACTION at law to recover damages for personal injury. There was a trial to a jury, and verdict and judgment for plaintiff. The defendant having taken an appeal to this court, an affirming opinion was handed down at the January term, 1919. See *Swaim v. Chicago, R. I. & P. R. Co.,* 170 N. W. 296. Thereafter, a petition for rehearing was granted, and the cause has been resubmitted, with additional arguments.—*Affirmed.*

*Porter & Greenleaf, F. W. Sargent,* and *J. G. Gamble,* for appellant.

*Howell, Elgin & Howell,* for appellee.

WEAVER, J.—The plaintiff was a member of a section gang in the employ of the defendant. In this labor, he was associated with one Amberg and others, and in their work they were under the command or direction of a foreman. On the occasion in question, plaintiff and Amberg, and perhaps others, were engaged in ballasting or repairing the track, each using what is spoken of in the record as a "tamping pick." This tool was made somewhat after the fashion of the common pick, except that, while one prong was drawn to a comparatively sharp point, the other was finished with a squared or flattened head. Plaintiff and Amberg were about eight feet apart, using the blunt ends of their picks to drive the broken stone, used for ballasting material, under the cross-ties. The method adopted by them in this respect appears to have been usual and proper in such work. It is the claim of the plaintiff that, while so employed, a stone was broken or shattered under a blow by the pick in Amberg's hands, and that a fragment of such stone, so driven through the air, struck him in the eye, causing him serious injury. He charges the defendant with negligence in respect to this injury, as follows: that it was the defendant's duty to furnish to its workmen reasonably safe and suitable tools for the work they were required to per-

form, and to keep the same in suitable repair; that it failed in this duty with respect to the tamping pick supplied to Amberg, by the use of which plaintiff claims to have been injured; that said pick had become worn and rounded upon its blunt or squared end, by reason of which a stone broken under its stroke had a tendency to fly off, and thereby become a source of danger to anyone within reach of the flying fragments; that this condition was known to the foreman having charge of the work and of the men; and that the need of repair had been expressly called to the attention of the foreman, and he had promised to attend to it promptly, but had failed so to do when the injury occurred.

The defendant took issue on the charge made in the petition, denying negligence and pleading that the risk of injury because of the condition of the pick was assumed by the plaintiff. It appears in evidence that these picks become rounded or beveled with use, and it was the practice of the foreman to gather them up, at intervals of about 30 days, and send them to the company's shops for repair. It is also shown, without material dispute, that, when such worn and impaired tools are used in tamping, the danger from flying fragments of stone is materially increased. The fact that the pick in question was worn and out of repair is not seriously denied, nor can it be contended that defendant did not know the fact. The foreman concedes that Amberg had complained of the pick used by him. It also appears that it was the custom of the foreman himself to take charge of the tools at the end of each day's work, and reissue them on the following day; hence, they were constantly under his personal observation and inspection. Indeed, we do not understand appellant to contend that the record is without evidence to sustain a finding that it was negligent, but it denies legal liability, on the grounds: First, that, even if there was negligence on defendant's part, there is no evidence on which to find that it was the proximate cause

of plaintiff's injury; and, second, that, in any event, plaintiff must be held to have assumed the risk of injury from the use of the tamping pick; and, third, that the tamping pick described is a simple tool, requiring only muscular strength in its use, and plaintiff must be held to have known the dangers, if any, incident to its use, and that, if there was any negligence in failing to make repairs, such need was clearly apparent to him, and he cannot be heard to say that, by remaining in the defendant's service, he did not take upon himself the risk arising therefrom.

I. Upon the question of proximate cause, we are satisfied that, if the defendant may be held chargeable with negligence with respect to the admittedly defective condition of the pick and its use in such condition,

**1. NEGLIGENCE: proximate cause: definition.** then the evidence is quite sufficient to sustain a finding that such neglect was the proximate cause of the injury. Practically all of the witnesses on both sides who were experienced in such work and the use of such tools unite in saying that, while the implement is in proper condition, there will be some breaking of stone under its blows, yet the fragments do not, as a rule, fly to any considerable distance, and the course of their flight, if any, is low or downward; but, as the striking face of the pick becomes worn and beveled or rounded, the quantity of fragments so produced is increased, and their course through the air is at a higher angle. The increase in the production of flying fragments by the use of a round-faced pick, as compared with a pick in proper condition, is placed by some of the witnesses in the proportion of four to one; while others say, "a half more." True, the effect of this testimony was sought to be weakened by cross-examination, but how far its weight or credibility was thereby affected was for the consideration of the jury. Proximate cause is not always capable of direct proof. Indeed, more often than otherwise, it is a matter

of deduction or natural inference from the circumstances appearing in evidence. It is no answer to the plaintiff's claim in this respect to say that fragments of rock will sometimes fly under the impact of a pick in perfect condition, and that it is, therefore, *possible* for plaintiff to have received the injury of which he complains, even if the pick in question had not been defective. Absolute certainty of proof is not required, and indeed is rarely obtainable. As it has been stated by this court:

"Proximate cause is probable cause; and the proximate consequence of a given act or omission, as distinguished from a remote consequence, is one which succeeds naturally, in the ordinary course of things." *Watson v. Dilts,* 116 Iowa 249, 252.

See, also, 1 Thompson on Negligence, Section 156. And this is true although the result produced may not have been anticipated. *Osborne v. Van Dyke,* 113 Iowa 557. Nor will the fact that some other cause operates with the defendant's negligence to produce the injury relieve the defendant if the injurious result is traceable in some material degree to his want of due care. *Gould v. Schermer,* 101 Iowa 582; *Langhammer v. City of Manchester,* 99 Iowa 295.

It is true that if, under all the proved circumstances, the conclusion that the injury was the proximate result of defendant's negligence is no more reasonable or probable or likely than that it was brought about by some other cause, for which the defendant is not responsible, then, of course, the plaintiff has failed to establish a fact without which he cannot recover. No well-considered precedent goes any further than this, and the theory sometimes urged in cases involving this question, that proof of proximate cause by circumstantial evidence must clearly and satisfactorily exclude the possibility of all other causes, is wholly untenable. We had occasion to consider this question in *Lunde v Cudahy Pack. Co.,* 139 Iowa 688, where we said:

"While plaintiff cannot recover upon a case which does no more than show a possibility that the injury is chargeable to the defendant's negligence, he is not bound to prove either the negligence or the proximate cause beyond a reasonable doubt. Such a rule would work an absolute denial of justice in a great majority of cases. Proximate cause is, under all ordinary circumstances, a question of fact; and, where it depends upon circumstances from which different minds might reasonably draw different conclusions, or where all the known facts point to the negligence of the defendant as the cause, the submission of the question to the jury affords no ground for assignment of error by such defendant. * * * If the plaintiff do no more than to show a state of facts which is equally consistent with the theory of due care on the part of the defendant, then, of course, he must fail. *Neal v. R. R. Co.*, 129 Iowa 5; *Huggard v. Refining Co.*, 132 Iowa 736; *O'Connor v. R. R. Co.*, 129 Iowa 636. But he is not bound to exclude the possibility that the accident might have happened in some other way, for that would be to require him to make his case beyond a reasonable doubt. He is only required to satisfy the jury, by a fair preponderance of the evidence, that the injury occurred in the manner he contends it did."

Of course, a party charged with negligence is not to be held liable in damages upon any mere conjecture that his negligence was the proximate cause of an injury, but when there is evidence from which such proximate cause may reasonably be found, it is for the jury to determine the fact. The rule is well stated by the Michigan court in *Schoepper v. Hancock Chemical Co.*, 113 Mich. 582, where it says:

"Defendant's counsel contend that the cause of this explosion is a matter of mere conjecture, and it is said by counsel that it is not enough for plaintiff to prove circumstances consistent with her theory, but that these circum-

stances, and each of them, must preclude any other rational conclusion. This we take to be but another way of stating the proposition that the proof must exclude all reasonable doubt. It is hardly necessary to say that no such rule obtains in civil cases. It is true that, where an injury occurs that cannot be accounted for, and where the occasion of it rests wholly in conjecture, the case may fail for want of proof. *Robinson v. Charles Wright & Co.*, 94 Mich. 283; *Redmond v. Lumber Co.*, 96 Mich. 545. But such cases are rare, and that rule should never be so extended as to result in a failure of justice, or in denying an injured party a right of action, where there is room for balancing the probabilities, and for drawing reasonable inferences better supported upon one side than the other."

To like effect is the Wisconsin case, *Gould v. Merrill R. & L. Co.*, 139 Wis. 433, where the court says:

"When a probable potential cause is shown, which may be identified as the proximate cause and made to answer the legal definition of proximate cause by inferences of fact from direct or circumstantial evidence before the jury, the latter may identify this as a proximate cause, although strict logic might discover other causes which the jury might from the same evidence have found to be the proximate cause. In other words, what is the proximate cause of an injury is usually and ordinarily a question of fact, and probative inferences from facts in evidence cannot be disposed of by styling them conjectures."

And we ourselves have repeatedly said that:

"When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result." *Brownfield v. Chicago, R. I. & P. R. Co.*, 107 Iowa 254; *Brown v. West R. Coal Co.*, 143 Iowa 662, 670; *Bell v. Bettendorf Axle Co.*,

146 Iowa 337, 341; *Paulson v. Bettendorf Axle Co.*, 146 Iowa 399, 403.

The fact being shown that the danger of injury from flying fragments of stone was materially increased by the use of defective tools, it became a fair question for the jury to say whether, under all the circumstances, the alleged negligence of the defendant with respect to the condition of the implement and its use was the proximate cause of plaintiff's injury. The vice of appellant's argument at this point is well illustrated by the following quotation from its brief:

2. MASTER AND SERVANT: duties and liabilities of master: defective tool.

"Now if the plaintiff had been injured as a result of a rock thrown by a perfectly square pick, since it is established by the evidence that such picks will throw rocks, surely it must be the conclusion of this court that his injury in such an event would have resulted from an ordinary risk incident to his employment, and it is with this thought, in view of the evidence heretofore referred to, that we have seen fit to call Your Honor's attention to the decisions of the Court of Appeals of the state of Kentucky, in *Jones v. Southern R. Co.*, 175 Ky. 455 (194 S. W. 558). Before this court can find a real distinction between the decision in that case and the facts in this, it must say, we respectfully submit, that one of four out of a total of five rocks struck the plaintiff, because the plaintiff and his witnesses say that a rounded pick will throw rocks four times as much as a square one. If we take their proportion as testified to in this case, then, out of each five rocks thrown, four of them are due to the rounded condition, while one is merely an incident to the service. Can this court say, under the evidence, that one of those four rocks instead of the fifth struck the plaintiff? If this court cannot so say, how can it avoid the conclusion that the plaintiff's injury was the result of risks incident to his employment?"

The weakness and inconsequence of the argument are too evident to require much discussion. Neither the trial court nor this court is called upon to say that "one of those four rocks" thrown off by a defective pick "struck the plaintiff," or that "the plaintiff's injury was the result of risks incident to his employment." The extent of the court's duty at this point is to say whether, upon the entire record, the plaintiff made such showing of defendant's negligence and of injury to himself by reason thereof as entitled him to submit the question of the cause of his hurt to the finding of a jury. That such was his right, we cannot doubt, unless it must be said, as a matter of law, upon grounds discussed in the next paragraph of this opinion, that he had assumed the risk of the consequences of the defendant's negligence. To hold otherwise, and follow the quoted argument to its logical conclusion, we must hold that, if the employer is able to show that there is some degree of danger in the work in question, even when due care is exercised, he cannot be charged with culpable negligence if he permits a four-fold increase in the hazard otherwise naturally incident to the employment, because the servant who suffers injury thereby is not able to negative the bare possibility that he might have been injured had there been no negligence. The decision in *Jones v. Southern R. Co.,* 175 Ky. 455 (194 S. W. 558) is wholly beside the point. In that case, there was no showing of negligence, and without negligence, there is, of course, no liability. This subject is well discussed in *Manning v. Portland S. Bldg. Co.,* 52 Ore. 101 (96 Pac. 545).

II. We turn next to what we understand to be the objection upon which appellant places **principal reliance.** Stated in somewhat varied form, its substance is that:

The tamping pick being a simple tool of ordinary manual labor, the defendant, as plaintiff's employer, is excepted from the operation of the general rule of duty to furnish him tools and implements in reasonably good order, and

suitable for the work required of the servant; or, if bound to exercise reasonable care in that respect, subsequent failure to inspect and repair was not negligence; or, if defendant may be chargeable with such negligence, then the risk therefrom was assumed by the plaintiff. The objection is still further expanded by the proposition that, assuming, and even admitting, that the pick was defective, as charged, and that its condition was reported to the foreman, who promised to attend to the needed repair, yet plaintiff cannot avoid the plea of assumption of the risk by showing that he remained in the defendant's service in reliance upon said promise. It may be admitted that precedents are found and cited for some of these propositions, but it is not shown that the doctrines thus epitomized have ever found expression in the decisions of this court, and we are quite sure that they are not, to the extent stated, in harmony with our previous holdings, or the great weight of authority elsewhere.

That a servant assumes the risk naturally incident to the service in which he is employed is, of course, universally true. It is also a well-established rule that he may, under some circumstances, be held to have assumed the risk arising from the negligence of his employer, and also that such assumption may, under some circumstances, be predicated upon the use by the servant, without objection or protest, of a simple tool or other appliance, implement, or machine of more complicated character, which he knows to be defective. In an action by the servant for damages on account of injury in the master's service, his assumption of the risk incident thereto is taken for granted, but his assumption of any risk created by or arising from the master's negligence is not presumed. It constitutes an affirmative defense, which the master must plead and prove.

3. Master and servant: assumption of risk: master's negligence.

That we may the more readily apply the law in this

respect, a further statement of the facts is desirable. We have already described the implements or tools in question.

It appears without dispute that they were furnished by the defendant, and that the foreman had them in charge. They were gathered by him into the defendant's tool house, or other place of deposit, every night, and reissued by him each morning. Whether they were distributed in a miscellaneous way, or whether each man had the same individual pick delivered to him at each distribution, does not appear. The tamping face of a pick, when in good order, was flat, but became worn and rounded in use. What the witnesses speak of as the "life of a pick" subject to such use was from 20 to 30 days; but, at the time of the accident, the picks had not been repaired or refaced for a much longer period, and were worn and rounded, and both Amberg and plaintiff had called the foreman's attention to the condition of the tools, and he had assured them that he would have them fixed.

III. With the testimony thus before us, our first inquiry is naturally directed to the nature of the duty, if any, resting upon the defendant with reference to the tools supplied by it for the use of its employees. That the general rule is that a master is required to exercise reasonable care to furnish suitable and safe tools, appliances, and instrumentalities for use in the work which the servant is expected to perform, is not questioned. This duty is of the same general class or nature as the obligation which the master assumes, to furnish the servant a reasonably safe place to work; and these two phases of magisterial duty are usually coupled together in the text-books and by the courts, in their discussions of the law of master and servant. In neither case is the master held to warrant the servant's safety, but he is held to the exercise of reasonable care to eliminate those elements of danger to the life and limb of the

*4. Master and Servant: duties and liabilities of master: safe tools.*

servant which are not the usual and natural incident of the service when the master has exercised reasonable care. In other words, it is an implied term of the servant's contract that he assumes the risk which naturally pertains to his work; but he is under no contract or legal obligation to assume any risk which is occasioned by a failure of duty on the part of his employer.

This has been so often held and is so well settled that it may be classed as an elementary proposition in this branch of the law, and it would be a waste of time to fortify its statement by any attempt at citation of the multitude of authorities thereon. It has apparently been held, however, in a few cases, that this rule is subject to an exception, where the tool, appliance, or instrumentality is of such simple character that its nature and quality are open to the inspection of the servant to whom it is delivered. Such exception has no substantial support in reason or principle, and, once established as the law, will open the door to grave abuses. The simple character of the tool or instrumentality may be a very material fact upon the question whether, in any given instance, the servant has assumed the risk of injury therefrom; but the initial duty of the master to exercise care to supply those tools and instrumentalities, simple or complex, is in no manner withdrawn or abrogated.

No precedent can be found in our own cases for the recognition of the alleged exception, but, on the contrary, the general rule of magisterial duty has been constantly applied and enforced by us. In *Funk v. Construction Co.*, 159 Iowa 320, 328, where the accident occurred by the breaking of so simple an appliance as a rope, we said:

"It is elementary that the employer is required to exercise reasonable care in furnishing appliances which, if handled with ordinary prudence, can be safely used by the employee in the performance of the task assigned him, and

he is responsible therefor, whether this duty is performed by himself or through another."

In the recent case of *Petersen v. McCarthy Imp. Co.*, 175 Iowa 85, quite comparable in its essential features with the one now before us, the plaintiff was injured by the use of simple grab hooks, designed for use in lifting and carrying timbers or girders. They were known to be defective, because their points were too soft, and became worn and dulled by use, with the result that, in their use, there was a liability of the points to slip from their hold. In an attempt to use them in carrying a girder, they did slip, and plaintiff was injured. Sustaining a recovery in his favor, we said:

"The defendant was bound to use ordinary care in the selection of machinery and appliances so as not to subject the employees to unreasonable danger that must follow from insufficient tools and appliances, or which are out of repair and, therefore, insufficient for the purpose intended."

The same rule was applied where the tool furnished was a crowbar, in *Anderson v. Illinois Cent. R. Co.*, 109 Iowa 524. In *Luisi v. Chicago G. W. R. Co.*, 155 Iowa 458, the plaintiff, a section hand, was directed to assist in moving a heavy tie, by carrying one end of a "small, round iron about two feet long," on which a part of the weight of the tie rested. The tie was wet, and, when lifted, it slipped from the iron bar, injuring the plaintiff. This was held sufficient to take the case to the jury. In *McGuire v. Waterloo & C. F. U. Mill Co.*, 137 Iowa 447, 448, actionable negligence was shown by proof that the master furnished a weak and worn chain, which broke under strain, and injured plaintiff. In *Flick v. Globe Mfg. Co.*, 172 Iowa 561, the tool in question was a simple punch, and plaintiff was himself a repair man; yet his use of the defective instrument was held insufficient, under the circumstances, to sustain a plea of assumed risk. Having some bearing on the question are,

also: *Wilder v. Great W. Cereal Co.*, 130 Iowa 263; *Steburg v. Vincent Clay P. Co.*, 173 Iowa 248; *Parkhill v. Bekin's Van & Storage Co.*, 169 Iowa 455.

Indeed, it is difficult to find a precedent anywhere which goes so far as to affirm the bald proposition that the master is absolved from all duty of care as to the kind, quality, and sufficiency of the tools and appliances, however simple, which he furnished his servant for their use in his service, though the broad language of a few courts, in discussing the doctrine of assumed risk, seems to approach that extraordinary, if not remarkable, departure from the generally accepted standard.

It is well, also, in considering the authorities, to bear in mind that the facts in this case do not bring it in line with those cases in which the master has furnished tools and instrumentalities in quantities, to which the servant resorts at will, and makes his own selection; nor with those other cases where the defect complained of was one which the servant had undertaken, or could reasonably be expected, himself, to repair. On the contrary, the picks used by the section gang were dealt out to the men each day by the foreman, who resumed possession and control of them at the end of the day's work; while the defect was such as could be cured only by shipment of the tools to the shop.

If either Amberg or plaintiff had any duty in the premises, it was to report the condition of the tools to the defendant or its foreman; but, as it appears that the foreman himself had them in his possession, and dealt them out every day, any report, to bring knowledge of the condition of the tools to defendant, can hardly be held to have been necessary. That question, however, is eliminated in this case by the admitted fact that they did complain; and the foreman, as a witness, admits that, when they made the complaint, he told them he "would get them fixed up."

The only case cited from our own reports as sustaining

the defendant's position on this subject is *Lynn v. Glucose Sugar Ref. Co.,* 128 Iowa 501. A reading of that opinion very clearly demonstrates its inapplicability to the case at bar. Indeed, there is no similarity between the cases, except in the fact that the servant, in each instance, lost an eye, by a flying particle set in motion by a striking tool; but the opinion denies plaintiff a right of recovery, not because there was no duty upon the master with respect to the tools, but because, as is there said, while there was evidence of the worn and battered condition of the sledge, there was "no evidence that the battered and worn condition of the hammers or sledges rendered them any more dangerous" than they would have been had they not been in such condition. That such was the extent of the rule there applied is seen by turning to the cases cited in its support. For example, *Wachsmuth v. Shaw Elec. C. Co.,* 118 Mich. 275, expressly recognized the duty of the master to exercise care in furnishing his servant a hammer, but held that there was no negligence in the fact that the tool became defective, when it was also proved that the servant was at liberty to get another, whenever it appeared to be unsafe. So, also, in *Georgia R. & Bank Co. v. Nelms,* 83 Ga. 70, a case which turned largely upon the construction of a statute. In speaking of the bearing of the common law on a claim for injury resulting from the use of a defective hammer, it is there said:

"The burden was upon the plaintiff to show negligence on the part of the defendant in supplying him with a defective hammer. * * * He must show that the hammer was defective, and that the company knew it, or could have ascertained it by the exercise of ordinary care and diligence."

The other cited precedent, *Martin v. Highland P. Mfg. Co.,* 128 N. C. 264, another "hammer case," while holding

that plaintiff was not entitled to recover, says, of the law applicable:

"If defendant furnished its employees with tools known to it to be defective, or by ordinary care and inspection could have known of such defects, and the injury was caused by reason of such defects, then there would have been evidence of negligence to be submitted to the jury."

Our conclusion, therefore, upon this feature of the case is that the simple character of the tools does not, in and of itself, exempt the employer from the general requirement of reasonable care to furnish his servants safe and suitable instrumentalities for the service they are expected to perform, or relieve him from the duty to make repairs, when informed of their necessity. A careful survey of the multitude of authorities bearing on this question demonstrates that, despite a few careless and confusing expressions by way of argument or dictum, there is a practical unanimity and agreement upon the following fundamental propositions:

1. The employer of labor is charged with the magisterial duty to exercise reasonable care to supply his workmen with tools and other instrumentalities reasonably suitable and safe for their intended use. The rule applies alike to all tools and instrumentalities; but, if they be what are called "simple tools," with which the ordinary servant may be presumed to be familiar, and their defects, if any, open to his observation, that fact is material, as evidence of what will be held due care in the master.

2. The duty to furnish suitable tools is generally supplemented by the further continuous duty to maintain them in proper repair, and to that end, the employer is required to make such inspection, from time to time, as is reasonably required, to ascertain the condition of the instrumentalities which he has furnished. But this duty is subject to an important modification, and this modification is substantially all there is in the so-called "simple tool" doctrine.

If the employer has performed his initial duty in furnishing such tools, he may rely upon the servant to discover any manifest defect therein, and to observe the effect of wear and use thereon, and to report the same to his employer or foreman, if the defect be one which he has not undertaken or is not expected to repair for himself. The master is, therefore, excused in such cases from the operation of the general duty of inspection, and cannot be charged with negligence in failing to discover defects which the servant can easily discover for himself, nor will he be charged with negligence for failing to make a repair which the servant may reasonably be expected to make for himself.

3. If the servant making use of the tool, whether simple or complicated, knows that such tool is defective, and knows, or, as a person of ordinary intelligence and prudence, ought to know, that the instrument is thereby rendered dangerous, yet remains in such employment, and continues its use without objection or protest or promise of repair, he waives the master's tort, and assumes the risk arising from the defective instrumentality.

5. MASTER AND SERVANT: assumption of risk: defective tools: waiver.

The thread of distinction here recognized between the exemption of the master from the primary rule of care in supplying his workmen with proper instrumentalities and appliances for the service required of them, and the duty of inspection to provide for their maintenance in safe condition, will be found moving through the entire mass of precedents and the discussions by our text-writers upon this subject. Instead of prolonging this opinion for any extended citations, we call attention to a comparatively recent case decided by the North Carolina court, *Mercer v. Atlantic Coast L. R. Co.*, 154 N. C. 399 (70 S. E. 742), where the subject is discussed in a very clear and convincing opinion by Allen, J. We quote therefrom the following pertinent proposition:

" 'It has become elementary in the doctrine of negligence that the master owes a duty, which he cannot safely neglect, to furnish proper tools and appliances to his servant.' 'He satisfies the requirements of the law if, in the selection of his appliances, he uses that degree of care which a person of ordinary prudence would use, * * * if he were supplying them for his own use.' * * * This duty applies alike to the simple and the complicated tools, but the authorities agree that, after performing this duty, the law does not impose the same obligations with reference to the two classes of tools. When the tools and appliances are complicated, the employer must inspect them, from time to time, and must see that they are maintained in a reasonably safe condition. * * * But the rule is different in reference to tools that are simple, such as hammers, chisels, spades, axes, etc. In such cases, the employer is not required to inspect, because the employee is presumed to be equally as conversant with the tool as the employer, and, being required to use it, is in better situation to discover its defects."

In the case in which this language is used, two servants were employed in cutting rivets from a metal tank, one servant holding a chisel against a rivet, by tongs made for that purpose, and the other striking the head of the chisel with a heavy hammer. The tongs were broken and imperfect, and the head of the chisel was worn and battered. Plaintiff used the hammer, and, in striking the chisel, a fragment of steel from the battered head flew into his eye, destroying the sight. The trial court having nonsuited the plaintiff, the Supreme Court held the ruling to be erroneous, and set aside the judgment of nonsuit.

While we have thus discussed the simple-tool rule, in its general scope and effect, because appellant has placed main reliance therein in this appeal, it may well be said that the first two propositions above stated are largely academic in this case, because: First, there is no claim or

charge that defendant was negligent with respect to its duty to supply the plaintiff with a proper tool.   On the contrary, it appears that, as furnished, the tamping picks were appropriate for the work to be performed, and in good repair, when first issued to the section gang.   Second, so, also, the matter of the employer's exemption from the duty of inspection is made wholly immaterial by the undisputed fact that not only had express complaint of the condition of these tools been made to the foreman, but that the foreman himself took the tools into his own possession at the close of each day's work, and dealt them out again each morning, and must, therefore, have known their condition.

IV. Proceeding from these premises, we have left to consider the defendant's proposition that plaintiff should be held, as a matter of law, to have assumed the risk.  This claim or argument is bottomed upon the fact that the defect of which plaintiff complains was not only of an open and visible character, but was admittedly known to both Amberg and himself; and it is insisted that, to avoid being charged with assumption of the risk, it was their duty to have quit the work promptly, when the fact of the faulty condition of the tools became known, or when, as a reasonable and intelligent person, he or they ought to have known it.   Whether this contention be correct depends very largely upon the proper answer to two questions.  To avoid such assumption, was it incumbent on the plaintiff or Amberg, either or both, to quit the work at once, or could they, in the absence of any promise of repair, wait for a time, in the reasonable expectation that the tools would be repaired, without complaint on their part?  And, again, when the promise to repair was in fact made, could they continue in the service a reasonable time, awaiting the repair, without assuming the risk?

It is undoubtedly the general rule that continuance in the service without objection or protest, with knowledge and

appreciation of a peril created by the master's failure of duty, operates as an assumption of the risk, and for injuries thereafter resulting, no action will lie in favor of the servant. It may also be conceded that, where the master's negligence has reference to a simple or common tool, and the alleged defects therein are of a patent or manifest character, the servant will not be heard to deny knowledge of them, or to complain of the master's failure to warn him or (ordinarily at least) of a failure to inspect. So, too, it is not an unjust rule that, when a servant to whom is delivered by the master a tool or machine or instrumentality of any kind knows or ought to know that it has become worn or out of repair, or a source of danger to himself or others, he is under duty to give notice thereof to the master, unless the latter is already possessed of the knowledge. The chief difference in this respect between the servant with a simple appliance or implement and another servant having charge of complex machinery is, in fact, that the former ordinarily requires comparatively little time and slight observation to ascertain the truth, and needs no other notice or warning than he derives from a superficial examination. How soon the notice should be given, and objection or protest made, must, we think, depend on the circumstances of each case. Take the one before us. Here was a set of tools which we may presume were fit and proper for use when first supplied to the men. Ordinarily, they were repaired by the company at comparatively short intervals. On this occasion, the interval was prolonged, and the tamping picks became worn, beveled, and rounded. We think it would be quite unreasonable to say that the men could not wait a short time, in the expectation that the repairs, though a little late, would still be made.

6. MASTER AND SERVANT: duties and liabilities of master: manifestly defective tool.

In the language of Judge Brewer, in *O'Rorke v. Union Pac. R. Co.*, 22 Fed. 189:

"Generally, a man cannot be called upon at the moment to say, 'There is a defect, or there is danger, and I will stop.' He has a right to wait a reasonable time, to consider the circumstances of the case, and to give notice to his employers that he is in danger; time enough to see whether the employer means to have the defect remedied."

See, also, *Fairbank v. Haentzsche,* 73 Ill. 236; *Northern Pac. R. Co. v. Mares,* 123 U. S. 710; *Southern R. v. Guyton,* 122 Ala. 231; *Rush v. Missouri Pac. R. Co.,* 36 Kan. 129; *Hoffman v. Dickinson,* 31 W. Va. 142.

But this particular question is of only incidental importance in this case, because of the effect upon the rights of the parties of the conceded fact that notice was given and complaint made, and that defendant, by its foreman, promised to make the needed repairs. Of the general rule that, when the servant notifies the master of any defect in his place of work, or in the instrumentalities furnished him for the performance of his work, and repair of such defect is promised, the servant may continue in the employment for a reasonable period, awaiting the repair, without assuming the risk, unless the danger is of such imminent and threatening character that no ordinarily prudent person would take such chances of injury, no serious dispute is or can be made; but here again we are asked to recognize an exception which excludes from the benefit of the rule the servant who is injured by reason of defects in what are called "simple tools."

7. MASTER AND SERVANT: assumption of risk: defective tools: promise to repair.

In the case of *Marsh v. Chickering,* 101 N. Y. 396, the New York court does recognize such exception in terms which are purely dictum; for, elsewhere in the opinion, it expressly declares that, even if a right of action might exist under some circumstances for injuries received from the use of a defective ladder, which was the subject of plaintiff's complaint, there was no evidence in the record that

the employer had failed in his duty, or that the ladder actually furnished "was not a proper ladder" for the use to which it was put, and that it was, in fact, "reasonably safe and suitable." Since that decision was announced, the dictum has been cited as authority in other New York cases, and by a few courts in other states; but its holding in this respect has not been followed generally, as we will hereinafter notice, and it is not sustainable on sound principle, or by any persuasive reasoning.

Moreover, when we carefully examine the precedents cited by counsel or found in the books which are said to support such holding, they will be found, almost without exception, to be cases where the plaintiff's injury was occasioned by an alleged defect of a tool or other simple instrumentality furnished to and used by himself, and not where, as in this case, the injury is occasioned by a defective instrument in the hands of another servant. The distinction thus pointed out between the case of the servant injured by the use of a tool in his own hands and the case of one who is injured by the use of such tool in the hands of another is too obvious and natural to require extended argument. *Campbell v. Gillespie*, 69 N. J. L. 279 (55 Atl. 276); *Baltimore & O. S. W. R. Co. v. Walker*, 41 Ind. App. 588 (84 N. E. 730); *Miller v. Camp Bird*, 46 Colo. 569 (105 Pac. 1105); *Savannah & S. R. Co. v. Pughsley*, 113 Ga. 1012 (39 S. E. 473).

To this it may be objected that, in the case before us, plaintiff knew the condition of Amberg's pick, and therefore he is not within the rule of the cited cases. Let it be admitted that he knew the condition of the pick, but it does not follow, as a matter of law, that he appreciated the peril therefrom at the time and place of his injury. He and Amberg were stationed some six to eight feet apart, and he swears he thought he could work there with safety. Un-

8. MASTER AND SERVANT: assumption of risk: jury question.

der these circumstances, it is not within the province of the court to say he does not tell the truth, or that his statement is essentially unreasonable, and that, as a matter of law, he must have appreciated the peril.   See *Rogers v. Roe,* 74 N. J. L. 615 (66 Atl. 408, 13 L. R. A. [N. S.] 691).   Moreover, most of the precedents which may be cited in support of such peremptory conclusion have been made to turn upon the fellow-servant rule, a rule which is conceded by counsel to be unavailable to the defendant under the statute now applicable to cases of this kind.

It is also to be said that, even if plaintiff would be held to have assumed the risk of danger from the use of Amberg's pick, as well as from his own, we again come back to the defendant's admitted promise to repair, and say that such promise, relied upon and acted upon, suspended or removed the assumption of risk for a reasonable time to give defendant opportunity to perform its promise.   The case of *Atchison, T. & S. F. R. Co. v. Sadler,* 38 Kan. 128 (16 Pac. 46), is quite parallel with the instant case, in all essential particulars.   There, the section gang was engaged in spiking rails, using heavy sledges or mauls, which had become worn and rounded with long use.   Because of this defect, a spike deflected under a strike of the maul, and was driven with force through the air, and severely injured the plaintiff.   Complaint of the defects in these tools had been made by the members of the gang, and the foreman had promised to attend to the needed repair,—the promise not being made to the plaintiff particularly, but to the gang; and a recovery of damages was sustained, although plaintiff continued in the work for two weeks after the promise was made.   See like holdings in *Adams v. Gulf, C. & S. F. R. Co.,* 101 Tex. 5 (102 S. W. 906) ; *Schiltz v. Pabst Brew. Co.,* 57 Minn. 303 (59 N. W. 188) ; *Sapp v. Christie Bros.,* 79 Neb. 701 (115 N. W. 319) ; *Lee v. Smart,* 45 Neb. 318; *Hough v. Railway Co.,* 100 U. S. 213 (25 L. Ed. 612) ; *Haley*

*v. Lombard,* 207 Mass. 545 (93 N. E. 633) ; *Southern K. R. Co. v. Croker,* 41 Kan. 747; *Missouri, K. & T. R. Co. v. Puckett,* 62 Kan. 770; *Louisville Hotel Co. v. Kaltenbrun,* (Ky.) 80 S. W. 1163; *Shea v. Seattle Lbr. Co.,* 47 Wash. 70; *Spencer v. Worthington,* 44 App. Div. 496 (60 N. Y. Supp. 873) ; and *Brouseau v. Kellogg S. & S. Co.,* 158 Mich. 312.

We think it clear, and the authorities hereinafter cited will demonstrate, that, while the fact that the tool or instrumentality in question is one of simple and familiar character and use is a factor in the employer's favor, in that he will not ordinarily be charged with the duty of inspection, or be expected to instruct or warn his servants as to its proper use and care, or as to the dangers naturally incident to its proper use, it does not, as a matter of law, absolve the master from his duty to make the repairs when notified of its need, or relieve him from the usual consequences of failing to keep his promise to repair. It would certainly not tend to strengthen the respect of fair-minded people for the law if, when a master has induced a servant to remain in his employment, by promise to repair a defect in an instrument of the servant's labor, and because of his failure to perform such promise the servant is injured, he may say to the injured person:

. "True, the tool I required you to use was defective; true, I induced you to continue in my service by promising to repair the defect; true, you did remain in reliance upon that promise; and true, I did not make the promised repair, and you suffered injury thereby: but you should not have been so foolish as to place any confidence in my word, or to be thereby persuaded to stay in my service. Your injury is, therefore, the fruit of your own folly, and I will make you no compensation."

The following are illustrative cases from our own reports:

In *Stoutenburgh v. Dow, etc., Co.,* 82 Iowa 179, one of

the allegations of negligence was the failure of the master to furnish proper lights for the servant's place of work, a defect the manifest character of which must, of course, have been patent to the servant. He notified the man in charge, who promised to remove the cause of complaint, but failed to do so; and it was held that, if the jury found such promise was made, the plaintiff did not assume the risk by remaining in the employment. Of the general rule, we said:

"And the rule is practically of universal application in this country. It is well explained in Cooley, Torts, page 559, as follows: 'If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risk.'"

The same general doctrine is affirmed in *Buehner v. Creamery Pkg. Mfg. Co.*, 124 Iowa 445, and *Pieart v. Chicago, R. I. & P. R. Co.*, 82 Iowa 148.

Other precedents are numerous, but it is sufficient to say that this court has consistently held to the general rule as above quoted from Cooley on Torts; and to charge a servant with assumption of a risk arising from the master's negligence, it must be found that the servant knew of the defect and appreciated the danger therefrom, and with such knowledge and appreciation remained in the service without objection or protest, and without promise of the needed repair. *Foster v. Chicago, R. I. & P. R. Co.*, 127 Iowa 88; *Huggard v. Glucose Sugar Ref. Co.*, 132 Iowa 724; *Miller v. White B. Monument Co.*, 141 Iowa 701; *Poli v. Numa B. Coal Co.*, 149 Iowa 104; *Burns v. Iowa Brick & Tile Co.*, 152 Iowa 61; *Carnego v. Crescent Coal Co.*, 163

Iowa 194; *Money v. Lower Vein Coal Co.*, 55 Iowa 671; *Box v. Chicago, R. I. & P. R. Co.*, 107 Iowa 660; *Cowles v. Chicago, R. I. & P. R. Co.*, 102 Iowa 507; *Forbes v. Boone Coal & R. Co.*, 113 Iowa 94; *Brusseau v. Lower Brick Co.*, 133 Iowa 245.

Further illustrating how generally the courts have applied these principles to cases where the alleged defective tool or instrumentality was of a simple character, we call attention to the following:

In *Seaboard Air Line R. Co. v. Horton*, 233 U. S. 492 (58 L. Ed. 1062), the charge of negligence was based upon an alleged defect in the equipment of a locomotive of which plaintiff was engineer, because of the absence of a guard glass over the water gauge. Plaintiff knew of the need of such glass, and had continued to operate the locomotive for some time before he was hurt, and had reported the same to the proper officer, and received assurance of repair, which was, in fact, not made. The trial court having instructed the jury, in effect, that, if the locomotive supplied to the engineer was unsafe because of this defect, the company was absolutely liable, the judgment for plaintiff was reversed, the court saying that the common-law rule was applicable, and stating such rule to be that the employer's duty is "to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen." Further speaking of assumed risks, the court adds:

"When the employee does know of the defect, and appreciates the risk that is attributable to it, then, if he continues in the employment without *objection,* or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If however, there be a promise of reparation, then, during such

time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man, under the circumstances, would rely upon such promise."

Substantially the same rule is followed by the same court in *Hough v. Railway Co.*, 100 U. S. 213 (25 L. Ed. 612), a leading authority on the subject. It is cited, and the rule as stated by us has been followed in the other courts too often for our citation. For an exhaustive collection of pertinent cases, see Volume 10, Rose's Notes, pages 891 to 899. Of these we may mention the court's opinion on the second appeal in *Seaboard Air Line R. Co. v. Horton*, 239 U. S. 595; also, *Ohio & P. Milk Co. v. Fehl*, 187 Fed. 792, where a servant was engaged in driving a team, and the question whether he assumed risk of a defect in the reins, after calling his employer's attention to their condition, was held to be for the jury. There was a like holding in *McClaren v. Weber*, 166 Fed. 714, where the question was whether the servant had assumed the risk of work with a defective sewing machine. In *Cudahy Pack. Co. v. Skoumal*, 125 Fed. 470, 473, plaintiff complained to his employer of a defective hammer, and defendant promised to supply a new one; but, before the promise was performed, plaintiff lost an eye by reason of the defect, and he was held entitled to recover. In *Hawley v. Los Angeles Creamery Co.*, 16 Cal. App. 50, 53 (116 Pac. 84), it was held that a driver of horses did not assume risk on account of defective reins, although he continued to use them ten or twelve days after the master promised to repair. The same rule was applied by the Georgia court in *Shue v. Central of Ga. R. Co.*, 6 Ga. App. 714 (65 S. E. 697), where the servant was supplied with tools which were case-hardened, instead of soft metal. In *Sapp v. Christie Bros.*, 79 Neb. 701, 708, the employer supplied his teamster with

a defective yoke, of which the latter made complaint. There was a like holding by this court in *Foster v. Chicago, R. I. & P. R. Co.*, 127 Iowa 84, 88, where the foreman of a section gang promised plaintiff to repair a defective brake on a hand car. There is a similar holding by the Kentucky court, where the servant complained of a defective hook on a crane. *Houston, etc., Co., v. Schneider*, 148 Ky. 651, 655. Illustrations of the practical universality of the rule could be continued quite indefinitely.

We are satisfied with the essential justice of the law as thus interpreted and applied, and we have no disposition to approve any material innovation therein.

The promise to repair being conceded, it was clearly a jury question whether the danger of injury from continuing in the defendant's service was of such imminent character that a reasonably prudent person would not have remained in the employment, trusting to the promised repair; as was also the further question whether the period of waiting was so prolonged that plaintiff should be held to have re-assumed the risk, or be charged with contributory negligence. *Rothenberger v. Northwestern Con. Milling Co.*, 57 Minn. 461 (59 N. W. 531) ; 1 Shearman & Redfield on Negligence, Section 215; *Acme Harv. Co. v. Atkinson*, 208 Fed. 244, 248; *Harris v. Hewitt*, 64 Minn. 54; *St. Louis, I. M. & S. R. Co. v. Holman*, 90 Ark. 555, 567; *Smith v. Backus Lbr. Co.*, 64 Minn. 447; *Mann v. Lake Shore & M. So. R. Co.*, 124 Mich. 641, 644; *Greene v. Minneapolis & St. L. R. Co.*, 31 Minn. 248 (17 N. W. 378) ; *Taylor v. Nevada-Cal.-Ore. R. Co.*, 26 Nev. 415, 427; *Crooker v. Pacific L. & M. Co.*, 29 Wash. 30, 39; *Brouseau v. Kellogg, etc., Co.*, 158 Mich. 312.

In the last-cited case, the court, speaking of the theory that, in assumption of risk, the effect of the employer's promise to repair does not apply to a tool or appliance of

**9. Master and Servant: duties and liabilities of master: repair of defective simple tool.**

simple design, repudiates its authority as inconsistent with sound principle, saying: "Regarding the employer's promise to repair as a temporary assumption of the risk on his part, it appears to us illogical to hold that the employee is no longer charged with the *obvious* risks of a complicated machine, but still assumes the *obvious* risks of a simple implement. We deem it more in accordance with the principle upon which the doctrine of assumed risk rests in this state to hold that it applies alike to simple tools and complicated machinery. We do not think it should be held, as a matter of law, that the directions of the master's representative did not amount to a promise to repair, upon which the plaintiff had a right to rely. Neither can it be affirmed, as a matter of law, that plaintiff was guilty of contributory negligence, without entirely depriving him of the protection afforded by the master's temporary assumption of the risk."

That these conclusions are in clear accord with the law, as settled by the great majority of cases, there is no room for doubt, and we find nothing in the arguments or reasoning employed for engrafting the alleged exception upon the rules so established to justify us in importing it into the law of this state.

The servants in this case not being required or expected to make the needed repairs for themselves, it became the duty of the employer, when complaint was made, if· not, indeed, before, to examine into the condition of the tools, and ascertain their condition and the likelihood of danger therefrom, and apply the needed remedy. *Towler v. New Jersey A. Mfg. Co.,* 79 N. J. L. 140 (74 Atl. 279). If the employer failed in this duty, the jury was justified in finding him negligent, and, since he had induced the plaintiff to remain in the employment by a promise of repair, the

jury could rightly find that there was no assumption of the risk.

V. It is conceded in argument that the fellow-servant rule has no application to this case. The appellant admits in argument that:

"Defendant is answerable for the use by its employee, although he may have been a fellow servant of the plaintiff, of a defective tool, just the same as if the tool had been used by a vice-principal."

It is also conceded by counsel, for the purposes of the case, that the evidence tended to show that the pick used by Amberg "was in a defective condition, and that such condition had been brought to the attention of the vice-principal in charge of the work." These concessions compel the appellant to plant its defense, solely and entirely, upon the two main propositions which have had our consideration: (1) The alleged lack of evidence from which the jury could find that defendant's negligence was the proximate cause of the injury; and (2) that plaintiff should be held, as a matter of law, to have assumed the risk.

For reasons stated, neither of these defenses is sustainable, upon the record and admitted facts.

No material error has been shown, and the judgment below is—*Affirmed.*

LADD, C. J., EVANS, GAYNOR, PRESTON, SALINGER, and STEVENS, JJ., concur.